In re Robert R. STRANO, Sr., Debtor.

In re John M. Gallagher, Debtor.

Nos. 98–30321(RTL), 96–32120(RTL).

United States Bankruptcy Court,
D. New Jersey.

May 19, 2000.

Robert R. Strano, Sr., Ocean, New Jersey, Pro Se Debtor.

Lawrence K. Lesnik, Ravin, Greenberg & Marks, P.A., Roseland, New Jersey, for Debtor, John M. Gallagher.

John J. Brogan, Brogan & Brogan, P.C., Shrewsbury, New Jersey, for Del Rod, Inc.

Angelo A. Stio, III, Jamieson, Moore, Peskin & Spicer, Princeton, New Jersey, for However, Inc.

### OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

■ Creditors' motions in two recent, unrelated cases provide this court with the opportunity to consider an issue of statutory interpretation which arises on a regular basis, but upon which the Third Circuit Court of Appeals has not ruled: Whether a bankruptcy court retains exclusive jurisdiction to determine the dischargeability of certain types of unscheduled debts in chapter 7 cases after the bar date for filing dischargeability complaints has passed. The particular, unscheduled debts are those described in 11 U.S.C. §§ 523(a)(2), (4), or (6) of the Bankruptcy Code[1] ("intentional tort debt(s)")[2]. Generally, a creditor with an intentional tort debt must initiate a proceeding in the bankruptcy court to determine the dischargeability of its claim within a specific time period. § 523(c); FED. R. BANKR.P. 4007(c). If the creditor fails to file a complaint within the time limit, the claim will be discharged. This procedure effectively grants the bankruptcy court exclusive jurisdiction to determine the dischargeability of an intentional tort debt. If, however, the debtor has failed to list the creditor on his schedule of liabilities, the creditor will not have received notice of the bar date. Thus, the Code provides that unscheduled, intentional tort debts are not discharged. § 523(a)(3)(B). The problem then becomes determining whether the particular debt is an intentional tort debt. The issue is whether the bankruptcy court is the exclusive forum in which to determine if an unscheduled debt is an intentional tort debt.

■ For the reasons explained below, this court concludes that while the bankruptcy court is the forum of choice because of its expertise on dischargeability issues, it is not the exclusive forum in which the dischargeability of an intentional tort debt

---

1. All statutory references contained herein are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

2. Such debts include those which arise from false pretenses, false representations, actual fraud or false written financial statements; fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; or willful and malicious injury. Section 523(a) was amended in 1994 to add certain marital obligations, as paragraph 15, to the exceptions to dischargeability for which an adversary complaint must be filed. Since matrimonial obligations are not implicated in either of the cases in this opinion, the term "intentional tort debt" will refer to the specific exceptions to dischargeability described in §§ 523(a)(2), (4) and (6).

must be litigated. Rather, bankruptcy courts share jurisdiction with other courts to determine whether a "debt is of a kind specified in paragraph (2), (4), or (6) of this subsection [523(a)]." § 523(a)(3)(B). The bankruptcy court's decision to accept jurisdiction to determine the dischargeability of unscheduled, intentional tort debts is discretionary, entailing a case by case analysis, similar to that used in discretionary abstention where jurisdiction is shared with other courts.

With respect to the two motions at issue in this opinion, a consideration of the circumstances of each case leads the court to grant the motion of the creditor, Del Rod, Inc. ("Del Rod"), in the case of Robert R. Strano, Sr. to reopen the case to file a complaint to determine the dischargeability of its debt. No proceeding is pending in another court and no other parties are involved. Congress' preference for the bankruptcy court to determine dischargeability of intentional tort debts suggests that the case should be reopened so this court can perform that role. On the other hand, in the case of John M. Gallagher, the motion of However, Inc., to require the debtor to schedule its claim and to fix a date for filing a dischargeability complaint will be denied. There is a pending state court action, which is far advanced, involving other parties to the same transaction and a jury trial demand, so the state court is the better place to resolve that matter.

This court has jurisdiction over these motions pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 referring all cases under Title 11 of the United States Code to the bankruptcy court. These are core proceedings under 28 U.S.C. § 157(b)(2)(I).

## FACTS AND PROCEDURAL HISTORY

### A. The Strano Case

On January 9, 1998, Robert R. Strano, Sr. filed a petition under chapter 13 of the Bankruptcy Code. The case was voluntarily converted by Mr. Strano to a case under chapter 7 on June 15, 1998. A "Notice of Commencement of Case Under Chapter 7" dated June 17, 1998 set the "deadline to file a complaint objecting to discharge of the debtor or to determine the dischargeability of certain types of debts" for September 14, 1998. The meeting of creditors was set for July 15, 1998. Pursuant to FED. R. BANKR.P. 2002(e), instead of a deadline to file a proof of claim, notice was provided as follows: "At this time there appear to be no assets available from which payment may be made to unsecured creditors. Do not file a proof of claim unless you receive notice to do so." The "Trustee's Report of No Distribution" was filed on August 28, 1998. Mr. Strano received his discharge on September 21, 1998 and his case was closed on September 29, 1998.

On November 19, 1999, Del Rod filed a motion to reopen the case to permit it to file a complaint to declare a debt nondischargeable. Mr. Strano was the sole officer, director and shareholder of R. Strano and Sons, Inc., a general contractor. Del Rod had agreed to perform certain masonry work as a subcontractor at public property owned by the Borough of Allenhurst, New Jersey (the "Borough"). Del Rod alleges it performed services worth $25,170 which were accepted by both Mr. Strano and the Borough, and for which R. Strano & Sons, Inc. was paid by the Borough. R. Strano & Sons, Inc., in turn, failed to pay Del Rod. The debt to Del Rod was not listed in Mr. Strano's schedules filed with his bankruptcy petition. Therefore, Del Rod received no notice of the bankruptcy and alleged that, in fact, it had only recently learned that Mr. Strano had filed for bankruptcy. Del Rod asserted that Mr. Strano committed fraud and breach of a fiduciary duty when his company failed to pay Del Rod, making the debt to Del Rod nondischargeable under §§ 523(a)(2) and (4). Del Rod filed a motion to reopen the case to permit it to file a nondischargeabil-

ity complaint under those two sections of the Bankruptcy Code. The court granted Del Rod's motion.

## B. The Gallagher Case

On March 18, 1996, John M. Gallagher filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On April 21, 1998, on the motion of the United States Trustee, the case was converted from chapter 11 to chapter 7. By notice dated April 30, 1998, the first meeting of creditors was set for June 16, 1998 and the "deadline to file a complaint objecting to discharge of the debtor or to determine dischargeability of certain types of debts" was set for August 17, 1998. The deadline to file a proof of claim was set for September 14, 1998.

On October 29, 1999, However, Inc. filed a motion seeking an order requiring Mr. Gallagher to amend his schedules to include However, Inc., setting a date for However, Inc. to file a proof of claim, and setting a date by which However, Inc. may file a nondischargeability action against Mr. Gallagher.·

However, Inc. alleges that on April 22, 1999, a complaint was filed against However, Inc. and Spaghetti Western, Inc., an affiliate of Mr. Gallagher, in the Superior Court of New Jersey, Monmouth County (the "Monmouth County Action") by William Crosta ("Crosta"). Crosta alleged a default under a certain promissory note dated January 5, 1996 given by Spaghetti Western, Inc., which note was allegedly guaranteed by However, Inc., as executed by Kevin McCormack, President of However, Inc. On July 15, 1999, However, Inc. answered the complaint, denying liability, and filed a third-party complaint against Mr. Gallagher and a Ronald Rinaldi, alleging fraud with respect to the forgery of Kevin McCormack's signature on the guar-

anty. However, Inc. has demanded a jury trial as to all issues.

On August 5, 1999, Mr. Gallagher's counsel advised However, Inc. that he would not be filing an answer to the third party complaint inasmuch as the Monmouth County Action was stayed by Mr. Gallagher's bankruptcy. However, Inc. asserts that it had no knowledge of the bankruptcy filing prior to August 5, 1999 and that it is not listed as a creditor of Mr. Gallagher in his schedules. Although However, Inc. has requested that he amend his schedules to include However, Inc. as a creditor, Mr. Gallagher has refused to do so and denies any liability to However, Inc. On December 27, 1999, an order was entered discharging Mr. Gallagher. No assets were distributed and the case was ready to be closed.

This court declined to order Mr. Gallagher to amend his schedules to include the debt to However, Inc., or to set a date for However, Inc. to file a complaint to determine the dischargeability of its debt. The state court may adjudicate the forgery, fraud and dischargeability issues in the pending Monmouth County Action[3].

## DISCUSSION

### I. Reopening the Strano Case

█ With respect to the Strano case, a motion to reopen a closed bankruptcy case is governed by § 350(b)[4] and FED. R. BANKR. P. 5010. Debtors or creditors may move to reopen a case to determine the dischargeability of a debt. 3 COLLIER ON BANKRUPTCY ¶ 350.03[4], at 350–10 (Lawrence P. King ed., 15th ed. Rev.1996). Indeed the legislative history of § 523 specifically states that "[p]roposed 11 U.S.C. § 350, providing for reopening of cases, provides one possible procedure for a determination of dischargeability and related issues after a case is closed." H.R.Rep.

---

**3.** However, Inc.'s motion for a date by which to file a proof of claim was denied without prejudice, renewable in the event that assets become available for distribution to unsecured creditors.

**4.** Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

No. 95–595, 95th Cong., 1st Sess. 363 (1977) *reprinted in* 1978 U.S.C.C.A.N. 6318, S.Rep. *No. 95–989.* Furthermore, FED. R. BANKR.P. 4007(b) provides, "[a] case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule."

■■■■ The decision to reopen a case rests within the discretion of the bankruptcy court. *Neville v. Harris,* 192 B.R. 825, 829 (D.N.J.1996). The court may consider a number of factors including equitable concerns, which should be favored over technical matters. *See In re Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991). With respect to Strano, one factor the court should consider is whether the bankruptcy court is the sole forum in which a determination of dischargeability can be made, and if not, whether it is the most appropriate forum in which to litigate dischargeability.

## II. *Jurisdiction to Determine Dischargeability of Unscheduled Intentional Tort Debts*

The issue of the bankruptcy court's exclusive jurisdiction to determine the dischargeability of an unscheduled, intentional tort debt after the bar date requires analysis of the legislative history of The Bankruptcy Act of 1898, as amended in 1970, and its successor, the Bankruptcy Code of 1978.

### 1. The Bankruptcy Act of 1898 ("the Act" or the "Bankruptcy Act")[5]

As originally enacted, under § 17, "Debts not Affected by Discharge" (11 U.S.C. § 35), the Act exempted four categories of debts from discharge: 1) federal, state and local taxes; 2) judgments for fraud, for property obtained by false pretenses or false representations, or for willful and malicious injury to property of another; 3) for unscheduled debts, except where the creditor had actual knowledge

of the bankruptcy; and 4) debts arising from fraud, embezzlement or defalcation while acting in a fiduciary capacity. The categories of debt excepted from discharge expanded over the years. 4 COLLIER ON BANKRUPTCY ¶ 523.LH[1], at 523–116. Under § 2 of the Act (11 U.S.C. § 11), the bankruptcy courts had original jurisdiction to determine if a debtor had the right to receive a general discharge in bankruptcy. The effect of the general discharge on a particular obligation was determined later, when it was raised as an affirmative defense by the debtor to enforcement of the claim by the creditor in a nonbankruptcy forum. *See Marshall Paper Co. v. Train (In re Marshall Paper Co.),* 102 F. 872, 874 (1st Cir.1900). In 1934, the Supreme Court ruled in *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), that the bankruptcy court had authority to determine the dischargeability of particular debts and to enjoin creditors from interfering with a debtor's discharge. In so ruling, the Supreme Court stated, "[i]t does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under the unusual circumstances such as here exist." *Id.* at 246, 54 S.Ct. 695. Thus, the bankruptcy courts had authority, under "unusual circumstances," to determine whether specific debts were discharged. As a general rule, however, the issue of whether a specific debt was discharged in bankruptcy was litigated in the state court where the creditor was seeking to enforce the debt. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 10, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), *citing Brown v. Felsen,* 442 U.S. 127, 129, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

In 1970, Congress amended the Bankruptcy Act, Pub.L. No. 91–467, 84 Stat. 990 (1970), to vest exclusive jurisdiction in the bankruptcy courts to determine the dischargeability of intentional tort debts. The House Report on the amendment states that:

---

**5.** Pub.L.No.171, 55th Cong. (July 1, 1898), 30 Stat.544 (1898) (Repealed 1978).

The major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in state courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

S. 4247 is meant to correct this abuse. Under it, the matter of dischargeability of the type of debts commonly giving rise to the problem; that is, those allegedly incurred as a result of loans based upon false financial statements, will be within the exclusive jurisdiction of the bankruptcy court. The creditor asserting nondischargeability will have to file a timely application in the absence of which the debt will be deemed discharged.

H.R.Rep. No. 91–1502, p. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 4156.

Congress' second purpose in enacting the amendments "was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them." *Brown v. Felsen*, 442 U.S. at 136, 99 S.Ct. 2205. Attached to the House Report was a letter in support of the bill from the Chief of the National Conference on Bankruptcy which quoted from the congressional testimony of Professor Charles Seligson, a preeminent authority on bankruptcy law. Advocating the passage of a similar bill in a previous session of Congress, Professor Seligson stated:

In my view, one of the strongest arguments in support of the bill is that if the bill is passed, a single court; to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problem in particular cases. The state court judges, however capable they may be, do not have enough cases to acquire sufficient experience to enable them to develop this expertise.

H.R.Rep. No. 91–1502, p. 5 (1970), U.S.Code Cong. & Admin.News 1970, pp. 4156, 4160.

## 2. The Bankruptcy Code of 1978 (the "Code" or the "Bankruptcy Code")

█ In 1978, Congress repealed the Act and adopted the Bankruptcy Code, Pub.L. No. 95–598, 92 Stat. 2549, now codified at 11 U.S.C. § 101 et seq. (enacted November 6, 1978 effective October 1, 1979). The analogous provision of § 17(c) conferring exclusive jurisdiction on the bankruptcy courts to determine the dischargeability of an intentional tort debt under the Code is § 523(c), which currently provides:

(c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15) as the case may be, of subsection (a) of this section.

FED. R. BANKR.P. 4007(c) explicitly provides that:

A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors

under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. . . .

With respect to the dischargeability of a scheduled, intentional tort debt, the legislative history makes clear that the provisions of § 523(c) when enacted in 1978, were not intended to change then current law.[6] Thus, since 1970, bankruptcy courts have had exclusive jurisdiction to determine the dischargeability of scheduled, intentional tort debts.

If a debt is not scheduled by the debtor, however, the creditor with an intentional tort debt may not know about the deadline for filing a complaint in the bankruptcy court until it has passed. Indeed, he may not know about the bankruptcy filing until he seeks to enforce his claim in a nonbankruptcy forum. Unscheduled debts are dealt with under the Bankruptcy Code in § 523(a)(3) which provides, in pertinent part:

A discharge under section 727 . . . does not discharge an individual debtor from any debt-

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and [7] timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

The avowed purpose of § 523(a)(3) is to protect the creditor's rights.[8]

### 3. The Case Law

In *Judd v. Wolfe*, 78 F.3d 110 (3d Cir.1996), the Court of Appeals for the Third Circuit addressed the issue of an unscheduled debt (not an intentional tort debt) in the context of a no-asset, no bar date case. The Third Circuit held that reopening a case to amend a debtor's schedules to add an omitted debt was a useless exercise. The court wrote, "in a no-asset, no-bar date case, dischargeability is unaffected by scheduling. After a case is closed, the debt in question was either discharged or excepted from discharge based on sections 523 and 727(b). Therefore, the filing of a motion to reopen is not necessary to discharge the debt if the statutory exceptions to discharge [of §§ 523(a)(2), (4), or (6)] do not apply." *Id.*

---

**6.** See H.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6321: "Subsection (c) requires a creditor who is owed a debt that may be expected [sic] from discharge under paragraph (2), (4), or (6) (false statements, embezzlement or larceny, or willful and malicious injury) to initiate proceedings in the bankruptcy court for an exception to discharge. If the creditor does not act, the debt is discharged. This provision does not change current law."

**7.** "The word 'and' in 11 U.S.C. § 523(a)(3)(B) has been construed in the caselaw as 'or' to correct a legislative error defeating the obvious legislative intent." *In re Walker*, 195 B.R.

187, 196 n. 10 (Bankr.D.N.H.1996), *citing In re Haga*, 131 B.R. 320, 323 (Bankr.W.D.Tex. 1991) (additional citations omitted).

**8.** As set forth in the Legislative History to § 523, "[u]nscheduled debts are excepted from discharge under paragraph (3). The provision, derived from section 17a(3) [of the Bankruptcy Act of 1898], follows current law, but clarifies some uncertainties generated by the case law construing 17a(3). The debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his right, unless the creditor had notice or actual knowledge of the case." H.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977). *See also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 77–79 (1978).

at 111. *See also Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993); *In re Mendiola*, 99 B.R. 864, 865 (Bankr.N.D.Ill.1989).

In the Strano case, if it is determined that Del Rod's claim is not of the kind specified in subsections 523(a)(2), (4) or (6), then Del Rod's claim was discharged even though it was not scheduled. Strano being a no-asset, no-bar date, chapter 7 case would be on all fours with *Judd* if Del Rod's claim is not an intentional tort debt.

The Gallagher case is not strictly the same as *Judd* since there was a bar date fixed. Nevertheless, since the trustee filed a report of no distribution, filing a proof of claim would have been a useless act. It would seem, therefore, that if However, Inc.'s claim is determined to be not of the kind specified in §§ 523(a)(2), (4) or (6), then it, too, would have been discharged. *See Stone v. Caplan (In re Stone)*, 10 F.3d 285 (5th Cir.1994). Which leads to the crucial question: Is the bankruptcy court the exclusive forum to determine whether a claim is of the kind specified in §§ 523(a)(2), (4) or (6)?

Since the creditor in *Judd* conceded that the debt was not of the kind specified in §§ 523(a)(2), (4), or (6), the court did not reach the issues confronting this court in these two cases. In dictum, referring to intentional tort debts, the court in *Judd* stated that "[s]ince section 523(c) provides that the dischargeability of these debts *must be determined by the bankruptcy court* and Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523(a)(3)(B) preserves the right of these creditors to litigate the dischargeability of their debts." *Judd*, 78 F.3d at 114. (Emphasis added). The quoted phrase suggests that the bankruptcy court is the exclusive forum for determining dischargeability of unscheduled, intentional tort debts; however, this language was not necessary for the decision in the *Judd* case because the creditor conceded that his claim was not an intentional tort debt. Closer examination of the statute suggests that bankruptcy jurisdiction is not exclusive for unscheduled, intentional tort debts.

Section 523(c)(1), which confers exclusive jurisdiction on the bankruptcy court to determine dischargeability of intentional tort debts, contains an exception: unscheduled, intentional tort debts. Specifically, § 523(c)(1) starts with the phrase, "[e]xcept as provided in subsection (a)(3)(B) . . . ." The implication is that exclusivity in the bankruptcy court is reserved for scheduled, intentional tort debts. In addition, FED. R. BANKR.P. 4007(c), which sets a bar date for commencing a proceeding to determine dischargeability of intentional tort debts, applies only to suits under § 523(c). Since unscheduled claims are specifically excluded from § 523(c), the bar date of Rule 4007(c) does not apply to unscheduled debts. Indeed, Rule 4007(b) explicitly states that, "[a] complaint *other than under § 523(c)* may be filed at any time." The Advisory Committee Note to this rule states:

> Subdivision (b) does not contain a time limit for filing a complaint to determine the dischargeability of a type of debt listed as nondischargeable under § 523(a)(1), (3), (5), (7), (8), or (9). Jurisdiction over this issue on these debts is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum. (Emphasis added).

Since unscheduled, intentional tort debts are treated under § 523(a)(3), a complaint to determine nondischargeability may be brought at any time and in any forum. Bankruptcy Judge Barliant has written:

> Section 523(c), by its own terms, does not apply to Section 523(a)(3)(B) claims. Therefore, the exclusive jurisdiction provisions of Section 523(c) are not applicable to the issue of dischargeability under Section 523(a)(3)(B). The time limitation of Bankruptcy Rule 4007(c) is also inapplicable, since that Rule applies only to complaints under Section 523(c), not

to complaints under Section 523(a)(3)(B). In effect, a debtor who failed to list a creditor loses the jurisdictional and time-limit protections of Sections 523(c) and Rule 4007(b) [sic, should be 4007(c)] with respect to that creditor.

*In re Mendiola,* 99 B.R. at 868 n. 6. The result is that a debtor who fails to schedule an intentional tort debt before the bar date loses the benefit of both the bar date and the exclusive jurisdiction of the bankruptcy court. Although Congress sought to protect debtors from abuse by harassing creditors when it gave bankruptcy courts exclusive jurisdiction over intentional tort debts in 1970, that protection is reserved for debtors who schedule such debts.

In his concurring opinion in *In re Beezley,* Circuit Judge O'Scannlain lamented that the real issue, that of the dischargeability of the creditor's debt, remained to be litigated. Judge O'Scannlain stated that since Beezley failed to schedule the debt, the debtor lost his right to the protections of § 523(c) and Rule 4007(c). *In re Beezley,* 994 F.2d at 1441, *citing American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480, 484 (N.D.Ind.1992).[9] Many courts have agreed with Judge O'Scannlain that the penalty to the debtor for failing to schedule an intentional tort debt is the loss of the exclusive jurisdiction of the bankruptcy court to determine dischargeability within the strict time limits of FED. R. BANKR.P. 4007(c).[10] *See, e.g., Irons v. Santiago (In re Santiago),* 175 B.R. 48, 51 (9th Cir. BAP 1994); *American Standard Ins. Co. v. Bakehorn,* 147 B.R. at 484; *In re Hicks,* 184 B.R. 954, 960 (Bankr. C.D.Cal.1995); *In re Woolard,* 190 B.R. 70, 73 (Bankr.E.D.Va.1995); *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),*

179 B.R. 913, 921 (Bankr.E.D.Cal.1995) and *In re Mendiola,* 99 B.R. at 868.

Other courts disagree. The leading case espousing the position that bankruptcy courts retain exclusive jurisdiction over unscheduled intentional tort debts is *In re Padilla,* 84 B.R. 194 (Bankr.D.Colo.1987). The court in *Padilla* stated that those who believe bankruptcy court jurisdiction is concurrent are wrong because they assume that the debt has already been determined to be an intentional tort debt; however, that is a determination only the bankruptcy court can make, and it must be determined before the applicability of § 523(a)(3)(B). *Id.* at 197. Thus says *Padilla,* the bankruptcy court must reopen a closed case to make such a determination. *See In re Walker,* 195 B.R. 187 (Bankr. D.N.H.1996), for an expanded analysis of the *Padilla* case. This court believes that the better reasoned view is that for unscheduled intentional tort debts where the creditor had no knowledge of the bankruptcy, the bankruptcy court shares jurisdiction with other courts to determine dischargeability.

It is also true that bankruptcy courts have special expertise in matters relating to dischargeability, which suggest that the bankruptcy court should be the preferred forum in which to litigate dischargeability issues. *See* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A), supra.* note 9, at 49, 61. This court is also mindful that in many situations,

> [t]he state court, which has no 'event of record' regarding the omitted creditor's claim, and which is generally unfamiliar with bankruptcy law, and particularly

---

9. For an excellent and comprehensive discussion of the general issue of unscheduled debts, *see* Lauren A. Helbling & Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am.Bankr.L.J. 33 (1995).

10. Furthermore, pursuant to FED. R. BANKR.P. 9006(a)(3), a bankruptcy court may only extend the time for filing a dischargeability complaint under § 523(c) for cause, on motion of a party in interest filed *before* the time for filing a complaint has expired.

unfamiliar with the convoluted statutory analysis regarding the scope of the bankruptcy discharge, the exceptions to discharge, and the legal effect of omitting a creditor in a no-asset chapter 7 case, must utilize its time and resources to thrash out the interplay between § 727(b), § 523(a)(3), and § 523(c) to determine whether or not the debt before the court survived the bankruptcy discharge.

*In re Walker*, 195 B.R. at 201–02. These considerations suggest the bankruptcy court is the preferred forum for litigating dischargeability matters.

There are four ways to litigate dischargeability in these situations. First, in the event that the creditor pursues a lawsuit on his claim in a non-bankruptcy forum, the debtor can assert the affirmative defense of discharge in bankruptcy and the court can determine if the debt falls within one of the intentional tort exceptions to dischargeability. Second, the debtor can remove the case to bankruptcy court. Third, either debtor or creditor can file a complaint to determine dischargeability under Bankruptcy Rule 4007(b). Fourth, the debtor can bring an action in the bankruptcy court to enforce the discharge injunction of § 524(a). *See In re James*, 184 B.R. 147, 150–51 (Bankr.N.D.Ala.1995), *citing In re Mendiola*, 99 B.R. at 870.

While the bankruptcy court can only exercise its choices as to the cases that come before it, there is a rational framework to determine whether a particular dischargeability issue should be litigated in bankruptcy court. The bankruptcy court must take into account that it is not the sole forum in which such issues may be litigated. Against that fact should be balanced the practical reality that state courts are often at a loss with respect to issues of bankruptcy. The analysis is either analogous to, or the same as, the doctrine of abstention.

### III. *Abstention*

A bankruptcy court has discretion to retain jurisdiction of an adversary proceeding to determine nondischargeability or to remand or abstain. *See Costa v. Welch (In re Costa)*, 172 B.R. 954, 962 (Bankr.E.D.Cal.1994); *See also*, Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A)*, *supra*, note 9, at 33, 63. Bankruptcy court jurisdiction over dischargeability disputes emanates from 28 U.S.C. § 1334 [11]. *See, In re Franklin*, 179 B.R. at 919. If a party removes a dischargeability action from state to federal court under 28 U.S.C. § 1452(a), the bankruptcy court to which such action is removed may remand the action to state court "on any equitable ground." 28 U.S.C. § 1452(b). Pursuant to 28 U.S.C. § 1334(c)(1) [12], a bankruptcy court may abstain from hearing a dischargeability action in the interest of justice, comity with state courts or respect for state laws. *In re Costa*, 172 B.R. at 963. Although usually raised by motion under FED. R. BANKR.P. 5011(b), abstention may be raised on the court's own initiative. *Id.* Thus when a bankruptcy court refuses to reopen a case in order to permit a state court to hear the matter, it is actually abstaining under 28 U.S.C. § 1334(c)(1). *See, Menk v. Lapag-*

---

11. 28 U.S.C. § 1334(a) and (b) provide as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

12. 28 U.S.C. § 1334(c)(1) provides as follows:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

*lia (In re Menk)*, 241 B.R. 896, 915 (9th Cir. BAP 1999).

The factors that a court should consider when determining whether discretionary abstention is appropriate are: (1) the court's duty to decide what is before it; (2) the effect on the efficient administration of the estate if the court abstains; (3) the possibility of inconsistent results stemming from the abstention; (4) the waste of judicial resources; (5) the presence of difficult or unsettled areas of state law more properly addressed in a state forum; (6) considerations of comity; (7) prejudice to any non-debtor party from proceeding in federal court; (8) the extent to which state law issues predominate over bankruptcy issues; (9) the presence of a related proceeding commenced in state court; (10) jurisdictional basis other than 28 U.S.C. § 1334; (11) how related the case is to the main bankruptcy case; (12) the substance of a "core" proceeding; (13) the feasibility of severing state law claims from the bankruptcy case; (14) the burdens to the court's docket; (15) the existence of a right to a jury trial; and (16) the presence of non-debtor parties in the case. *See Gibbons v. Stemcor USA, Inc. (In re Livingston & Co., Inc.)*, 186 B.R. 841, 861–62 (D.N.J.1995). While these factors should be used as a framework for making a decision, other things being equal, the bankruptcy court should be the preferred forum for litigation of nondischargeability. "Discretionary abstention should be exercised cautiously and sparingly." *Id.* at 861. *See also, In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750 (D.N.J.1996) and *Balcor/Morristown L.P. v. Vector Whippany Assocs.*, 181 B.R. 781 (D.N.J.1995).

## A. *Application of the Abstention Factors to the Strano Case*

The Strano case is a closed, no-asset case, thus where the action is tried will have no effect on the bankruptcy estate. Since the issue was first raised in this forum and there are no parties other than the debtor and the creditor, judicial economy suggests that the case should be tried in the bankruptcy forum. The legal issues involved are whether Mr. Strano, as the general contractor, owed a fiduciary duty to Del Rod such as to create a nondischargeable debt under § 523(a)(4). The meaning of the term "fiduciary" is a question of federal law under the Bankruptcy Code. Whether a trust relationship existed between a contractor and a subcontractor on a public project is a matter of state law. Thus there are mixed issues of state and federal law; however, there do not appear to be any unsettled issues of state law which would require the bankruptcy court to speculate on how a New Jersey court would treat any issue. There is no state law proceeding currently in progress and there are no other participants other than the debtor and the creditor. The issue of dischargeability of a debt is a core issue but the issue of the debtor's breach of fiduciary duty has no other basis for federal jurisdiction. The issue raised by Del Rod, alleged embezzlement of funds it was owed, is unrelated to the main bankruptcy case. The burden on the court's docket is a neutral factor. Considering all of the factors, the court concludes that in the Strano case, given that there is no pending state court proceeding, no unrelated parties, no unsettled areas of state law, and the bankruptcy court's special expertise in dischargeability matters weigh in favor of reopening this case to permit the litigation of the issues raised in the bankruptcy court. The court therefore grants Del Rod's motion to reopen the case to file a nondischargeability action against Mr. Strano.

## B. *Application of the Abstention Factors to the Gallagher Case*

Because this is a no-asset case that is about to be closed, there is no effect of litigating the nondischargeability of the alleged debt to However, Inc. on the administration of the bankruptcy estate. The legal issues are mixed state issues of

fraud and forgery and federal issues of dischargeability, and the law is not difficult or unsettled. The Monmouth County Action was instituted last April and involves parties other than the debtor and However, Inc. However, Inc., is being sued by a third party to enforce the guaranty. However, Inc., alleges that either Mr. Gallagher or another party to the Monmouth County Action forged the signature of its principal. The determination of whether the signature was forged and who forged it can be more easily adjudicated in the state forum, since all parties are involved in that lawsuit. The elements of fraud in New Jersey are those that would be used to establish the nondischargeability of the debt in the bankruptcy forum. Although the issue of the dischargeability of a debt is a core proceeding, there is little relationship between the virtually closed, no-asset personal bankruptcy and the proposed adversary action. However, Inc., did request a jury trial and is entitled to have it in the Monmouth County Action.

Since there is an existing action involving all parties to the lawsuit, there is no pressing reason to commence a new action, which would involve a separation of the main action on the guaranty from the third party complaint against the Mr. Gallagher. Therefore, in the Gallagher case the court finds that considerations of judicial economy and comity weigh in favor of the bankruptcy court's abstention from litigating the dischargeability in the bankruptcy court. Accordingly, the court denies the motion to set a date for However, Inc., to file a complaint objecting to dischargeability of the claim it has against the Mr. Gallagher.

### CONCLUSION

The bankruptcy court has concurrent jurisdiction with other courts to determine whether an unscheduled debt is excepted from discharge under § 523(a)(3)(B). In the closed case of Robert R. Strano, Sr., the motion of Del Rod to reopen the case to file a nondischargeability complaint is granted. In the case of John M. Galla-

gher, the motion by However, Inc. to require Mr. Gallagher to amend his schedules and to set a deadline for filing a proof of claim and a complaint to determine dischargeability is denied. Mr. Gallagher may raise his discharge as a defense in the state court which may determine if the debt is of the type excepted from discharge under § 523(a)(2), (4) or (6).