879 A.2d 1242 (2005)
379 N.J. Super. 574
FOLEY, INC., Plaintiff-Appellant,
v.
FEVCO, INC. and Milita Rodriguez, Defendants, and
Elisa Rodriguez, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 2005.
Decided August 25, 2005.
*1244 Andrew R. Turner, South Orange, argued the cause for appellant (Turner Law Firm, attorneys; Mr. Turner, of counsel and on the brief).
Stephen M. Goldberg, Green Brook, argued the cause for respondent.
Before Judges STERN, WECKER and GRAVES.
The opinion of this court was delivered by
WECKER, J.A.D.
Plaintiff, Foley, Inc., appeals from a final order entered in the Law Division in favor of defendants Elisa Rodriguez and Milita Rodriguez. The order vacated a judgment entered in plaintiff's favor because the debt underlying that judgment previously had been discharged as to each individual defendant in bankruptcy.[1] On appeal, plaintiff argues that both its security interest in the corporate debtor's property and defendants' individual liability as guarantors of the corporate debt were erroneously determined to have been discharged in bankruptcy, because plaintiff had no notice of the bankruptcy proceedings and its claim was omitted from each defendant's Schedule D list of creditors. Defendant Elisa Rodriguez responds that the omission was inadvertent, and irrespective of the omission, the discharge applied both to listed and unlisted creditors. We disagree and reverse.

I.
The rather involved procedural history provides background to this appeal. Plaintiff and Fevco, Inc. were involved in various business transactions, beginning in 1990 and continuing through 1997. On June 29, 1990, Elisa and Milita Rodriquez, on behalf of Fevco, applied for and received an extension of credit from plaintiff. On the same day, they executed a personal guaranty for Fevco's debt to plaintiff. Between 1990 and 1995, plaintiff sold and leased equipment and provided service to Fevco. On November 27, 1995, in order to maintain its credit with plaintiff, Fevco granted plaintiff a security interest in a Caterpillar Model 963 track loader. The security agreement also provided that Fevco would pay off its debt, $70,853.67, in monthly installments of $1,103.23. Fevco defaulted on the installment payments. Fevco (and defendants) also failed to turn over the Model 963.[2]
On October 23, 1997, plaintiff filed a complaint against Fevco and defendants demanding the $70,853.67 balance due, $14,170.73 in counsel fees, and a judgment of possession for the Model 963 track loader. Due to "administrative difficulties," which the record does not explain, that complaint was dismissed; plaintiff filed a second, identical complaint on November 13, 1998.
*1245 Unbeknownst to plaintiff, on November 24, 1998, Elisa Rodriguez filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. Elisa's petition omitted plaintiff as a creditor on her Schedule D list of creditors. The chapter 7 trustee filed a notice of proposed abandonment, describing Elisa's property to be of "inconsequential value." No objections were made, and on March 15, 1999, the bankruptcy court deemed the matter a "no asset" case and discharged Elisa's debts under 11 U.S.C.A. § 523. Milita Rodriguez apparently had filed a similar chapter 7 bankruptcy petition on September 29, 1998, and also omitted the debt owed to plaintiff. Milita's debts were similarly discharged by order dated March 8, 1999.[3]
On April 15, 1999, plaintiff, unaware of defendants' bankruptcy petitions or the previously entered discharges, sent defendants a notice of proof hearing with respect to the Law Division complaint. Defendants did not respond. The Law Division held that proof hearing on May 4, 1999, and on May 13, plaintiff obtained an order of judgment against Fevco and the individual defendants, awarding $85,024.40 in damages and counsel fees as well as a judgment of possession for the Model 963.
Plaintiff served Elisa with an information subpoena on May 26, 1999. Defendants' attorney responded by letter on September 28, 1999, informing plaintiff that the debt had been discharged as to each of the individuals, and that plaintiff had been "inadvertently omitted" as a creditor on defendants' bankruptcy filings. The attorney claimed that the bankruptcies were "no asset" cases in which the debts held by unlisted creditors remained discharged, citing Judd v. Wolfe, 78 F.3d 110 (3d Cir.1996).
No significant action respecting the debt or the discharges was taken by any party for more than three years.[4] On May 19, 2003, Elisa moved under N.J.S.A. 2A:16-49.1 to vacate the May 13, 1999 Law Division default judgment. The court granted her motion on June 6, 2003, and plaintiff filed this appeal. On September 11, 2003, we ordered a temporary remand, stating, "Both sides may supplement the record below, defendant within 20 days of today, and plaintiff within 30 days of today. Oral argument shall be afforded to the parties, and the trial court shall make findings of fact and conclusions of law within 60 days of today." During the pendency of the remand, Milita also moved to vacate the judgment.
Pursuant to the remand order, the Law Division judge heard argument on January 9, 2004. He then allowed the parties thirty days to consider whether they should proceed in the bankruptcy court. On February 5, 2004, the court conducted further argument by telephone. The parties agreed that there was concurrent jurisdiction to address the dischargeability issue in the bankruptcy court and the Superior Court. Nonetheless, the judge vacated the state court judgment without holding a plenary hearing on plaintiff's non-dischargeability claim. The judge's February *1246 24, 2004 letter opinion concluded as follows:
After reviewing the submissions by both parties, the bankruptcy code and the relevant case law, Elisa and Milita Rodriguez's motions [sic] to discharge and vacate the 5/13/99 judgment are granted. While Foley argues that the judgment is nondischargeable under § 523 the court disagrees. Clearly the debt did not fall within any of the exceptions provided by § 523(a)(2), (4) or (6) of the Bankruptcy Code. Ordinarily debts not listed in the bankruptcy petition and which the creditor has no notice are not dischargeable. An exception exists, however, for debts not listed in no-asset cases, which these were. See Judd, supra. Additionally, the court finds that the creditor, Foley, could have moved to reopen the case under § 727(d) or (e), but failed to do so.
The judge signed an order the same day, vacating the judgment as to both defendants.[5]
Defendants received the judge's order on February 27, but plaintiff did not receive the order from defense counsel until March 10. Because of concern that defendants might dispose of their assets (particularly their real property) during the pendency of this appeal, plaintiff applied to the Law Division judge for a stay. The judge heard the parties' argument on March 25, 2004, and stayed the February 24 order vacating the judgment and thus the judgment lien on defendants' property. It was then that defendants' counsel disclosed that the February 24 order vacating the judgment had been sent to the Clerk's Office in Trenton before plaintiff's counsel received it, and the real property had been sold sometime in "mid-March."
The judge therefore stayed enforcement of the February 24 order (vacating the judgment) for 45 days, and instructed defendants' counsel to inform his clients that a court order "has been entered preventing them from dissipating" the proceeds of the sale of the real estate. That order was entered on March 29, and we continued the stay of the February 24 order, thus leaving the default judgment in force.

II.
Plaintiff's contention that the trial judge lacked jurisdiction to enter the February 24, 2004 order, because of the appeal pending in this court, is without merit. Generally, a notice of appeal deprives the trial court "of jurisdiction to act further in the matter unless directed to do so by the appellate court...." Manalapan Realty, L.P. v. Tp. Comm. of Manalapan, 140 N.J. 366, 376, 658 A.2d 1230 (1995). Rule 2:9-1(a) provides:
Except as otherwise provided by R. 2:9-3, 2:9-4 (bail), 2:9-5 (stay pending appeal), 2:9-7 and 3:21-10(d), the supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed. The trial court, however, shall have continuing jurisdiction to enforce judgments and orders pursuant to R. 1:10 and as otherwise provided. The appellate court may at any time entertain a motion for directions to the court or courts or agencies below or to modify or vacate any order made by such courts or agencies or by any judge below.
Here we remanded the matter expressly to permit additional briefing and findings. Our "instructions to the trial court are binding on that court." Pressler, Current N.J. Court Rules, comment 1 on R. 2:9-1(a) (2005). The record in this case *1247 does not support plaintiff's contention that the trial judge proceeded outside the scope of our remand instructions. On the contrary, we shall explain in Part VI of this opinion that the judge did not fully address the dischargeability of the debt, thus requiring a further remand.

III.
Plaintiff's argument that its security interest was not subject to the discharge in bankruptcy has no relevance to this case. Only Fevco was a party to the security agreement, and the individual defendants, not Fevco, are the debtors in bankruptcy whose discharge is in issue. Plaintiff's contention that its status as a secured creditor distinguishes Judd v. Wolfe, 78 F.3d 110 (3d Cir.1996), is therefore without merit, since it is not a secured creditor as to Elisa or Milita.[6] We find Judd inapplicable for other reasons, which we shall address in Part V.B. of this opinion.

IV.
Where a debtor, like each of the individual defendants here, is "concerned about the possible future ramifications of the record of the judgment, New Jersey law allows a debtor" to have the judgment cancelled. In re Hamilton, 286 B.R. 291, 293 (Bankr.D.N.J.2002) (referring to the relief afforded by N.J.S.A. 2A:16-49.1). N.J.S.A. 2A:16-49.1 provides, in pertinent part:
At any time after 1 year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment or the debt upon which such judgment was recovered, an order shall be made directing said judgment to be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by entering on the record or in the margin of the record of judgment, that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge. Where the judgment was a lien on real property owned by the bankrupt prior to the time he was adjudged a bankrupt, and not subject to be discharged or released under the provisions of the Bankruptcy Act, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by him subsequent to his discharge in bankruptcy.
[Emphasis added.]
The statute "was enacted as an ancillary remedy for discharge of judgments, within the state court system, to assure that judgments intended to be discharged under federal bankruptcy law would not continue to remain on record, thereby requiring payment at some time in the future." Party Parrot, Inc. v. Birthdays & Holidays, Inc., 289 N.J.Super. 167, 173, 673 A.2d 293 (App.Div.1996) (quoting In re Arevalo, 142 B.R. 111, 112 (Bankr.D.N.J. 1992)).
As plaintiff contends, although a discharge in bankruptcy prohibits further in personam actions against the discharged debtor, it does not prohibit proceeding in rem against the debtor's property. *1248 Id. at 174, 673 A.2d 293. That exception for in rem proceedings, however, applies only in circumstances where the judgment that created the lien against the property was entered before the bankruptcy petition was filed. See Hamilton, supra, 286 B.R. at 293 n. 2 (stating that section 524(a)(1) "makes clear that an in rem judgment, based upon a prepetition lien and running solely against debtor's property, is not affected by the discharge injunction") (emphasis added); Chem. Bank v. James, 354 N.J.Super. 1, 9, 803 A.2d 1166 (App.Div.2002) (because the creditor failed to perfect a valid lien against defendant's real property prior to discharge or within one year thereafter, the debtor was entitled to relief under N.J.S.A. 2A:16-49.1). In this case, plaintiff's judgment was not entered until after the bankruptcy court orders discharging defendants' debt to plaintiff. Thus if the debt was dischargeable, enforcement of the state court judgment lien is barred by 11 U.S.C.A. § 524(a) as well as by N.J.S.A. 2A:16-49.1.

V.
The question before us is whether defendants' liability as personal guarantors of Fevco's debt was discharged by their respective bankruptcies. If so, the subsequent Law Division judgment against defendants was void ab initio and was properly vacated. We are convinced that material issues of fact precluded summary disposition of plaintiff's non-dischargeability claim; that the Superior Court has concurrent jurisdiction with the bankruptcy court to determine dischargeability of the debt; and that it was error for the judge in effect to assume dischargeability because plaintiff could have sought to reopen the bankruptcy to challenge the discharge.

A.
As we have said, if each defendant's obligation as a guarantor was dischargeable, then plaintiff's Law Division judgment against defendants was void ab initio and was properly vacated. 11 U.S.C.A. § 524(a) provides that a discharge
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;
(2) operates as injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.[7]
[Emphasis added.]
See In re Hensler, 248 B.R. 488, 491 (Bankr.D.N.J.2000) ("Section 524 of the Bankruptcy Code both (1) voids any judgment of any court that violates the bankruptcy discharge, and (2) operates as an injunction against the continuation or commencement of an action to collect any discharged debt."). Here, the bankruptcy court entered both discharges approximately two months before entry of plaintiff's Law Division judgment. Thus, if the debt was dischargeable, the judgment entered in violation of § 524(a)(2) was void under sub-section (a)(1).
*1249 The scope of a discharge in bankruptcy is defined in 11 U.S.C.A. § 727(b). In relevant part, that statute provides: "[A] discharge under sub-section (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, ..." 11 U.S.C.A. § 727(b) (emphasis added). "Because section 727(b), on its face, does not create an exception for unlisted or unscheduled debts, every prepetition debt is discharged under section 727(b) subject to the provisions of section 523(a)(3)." Judd v. Wolfe, supra, 78 F.3d at 114.
The one exception to the rule enunciated in Judd is that the debt is not dischargeable if it was incurred through "false pretenses, false representation, or actual fraud," 11 U.S.C.A. § 523(a)(2), "fraud or defalcation, while acting in a fiduciary capacity," 11 U.S.C.A. § 523(a)(4), or "willful malicious injury by the debtor," 11 U.S.C.A. § 523(a)(6). See also 11 U.S.C.A. § 523(c)(1). Plaintiff argues that this exception bars the discharge of this debt, and thus the trial court should not have vacated the judgment. Section 523(a)(3)(B) provides that a discharge under section 727(b) is not enforceable against a creditor whose debt was not scheduled and who did not have actual knowledge of the bankruptcy filing, but only if the debt arises out of fraud or similar circumstances or "willful and malicious" injury and the creditor requests the court to make such a determination. See 11 U.S.C.A. § 523(a)(3)(A)(2), (4), and (6), and § 523(c)(1).
Plaintiff alleges, as it did in the Law Division, that
The New Jersey statute regarding theft or conversion of collateral in which a creditor has a security interest is aligned with these Bankruptcy Code exceptions to discharge. N.J.S.A. 2C:21-12. Therefore, the Defendant's [sic] reliance upon the Third Circuit's holding in Judd v. Wolfe is inapposite to the case at Bar. Rather, the failure to include the secured debt of the Plaintiff, which was known to the Defendant, and/or for defalcation of the second collateral, constitutes an exception to discharge.
Defendants' failure, in light of their relationship to the corporate debtor,[8] to turn over or even disclose information as to the whereabouts of the Model 963, and their premature conveyance of the real property, may be evidential in a plenary hearing to determine plaintiff's allegation of fraud as an "intentional tort" to establish the non-dischargeability of the debt in issue here.[9]

B.
The next question is whether plaintiff's non-dischargeability claim was properly brought in the Superior Court in opposition to the application to vacate the default judgment, and if so, whether the judge erred in summarily concluding that the debt was discharged. In In re Strano, 248 B.R. 493 (Bankr.D.N.J.2000), Judge Lyons addressed a question not previously addressed by the Third Circuit: "Whether a bankruptcy court retains exclusive jurisdiction to determine the dischargeability of *1250 certain types of unscheduled debts in chapter 7 cases after the bar date for filing dischargeability complaints has passed." Id. at 495. Referring to the categories of debt described in section 523(a)(2), (4), and (6) as "intentional tort debts," Judge Lyons explained: "Generally, a creditor with an intentional tort debt must initiate a proceeding in the bankruptcy court to determine the dischargeability of its claim within a specific time period." Ibid. (citing 11 U.S.C.A. § 523(c); Fed. R. Bankr.P. 4007(c)). Dischargeability of an unscheduled debt requires a court to determine whether the particular debt was "an intentional tort debt." The question Judge Lyons addressed, in the context of a creditor's application to reopen a bankruptcy proceeding, was whether the bankruptcy court's jurisdiction over a non-dischargeability claim was exclusive. The judge concluded that "while the bankruptcy court is the forum of choice because of its expertise on dischargeability issues, it is not the exclusive forum...." Ibid.
In that opinion, Judge Lyons described the court's "discretionary" role as requiring "case by case analysis." 248 B.R. at 496. He concluded that the circumstances in one of the cases (two cases were consolidated in the opinion) justified reopening the bankruptcy to permit a complaint challenging dischargeability. In the second case, the judge rejected a motion to reopen the bankruptcy because there was a "far advanced" state court action, involving other parties and including a jury demand, making the state court the more appropriate forum.[10]
In concluding that jurisdiction over dischargeability of a debt is not exclusively placed in the bankruptcy court (although it is the preferred forum), Judge Lyons addressed seemingly contrary language in Judd and concluded that it was dictum. There the Third Circuit described the creditor's right to file a proof of claim in a bankruptcy proceeding as a fundamental one. Judd, supra, 78 F.3d at 114. "Section 523(a)(3)(A) honors this right, by excepting from discharge debts owed to creditors who did not know about the case in time to file a claim." Id. at 115. However, in a chapter 7 case where no assets are available for distribution among the creditors, the court described that right as a "hollow one." Ibid. The court concluded in Judd that "[a]n omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim"; therefore, in a "no asset" case, there is no reason to reopen the bankruptcy proceeding to allow the omitted creditor to file a proof of claim, and the debt remains discharged.[11]Ibid.
As Judge Lyons explained:
Since the creditor in Judd conceded that the debt was not of the kind specified in § § 523(a)(2), (4), or (6), the court did not reach the issues confronting this court in these two cases. In dictum, referring to intentional tort debts, the court in Judd stated that "[s]ince section 523(c) provides that the dischargeability of these debts must be determined by the bankruptcy court and Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523(a)(3)(B) preserves the *1251 right of these creditors to litigate the dischargeability of their debts." Judd, 78 F.3d at 114. (Emphasis added). The quoted phrase suggests that the bankruptcy court is the exclusive forum for determining dischargeability of unscheduled, intentional tort debts; however, this language was not necessary for the decision in the Judd case because the creditor conceded that his claim was not an intentional tort debt. Closer examination of the statute suggests that bankruptcy jurisdiction is not exclusive for unscheduled, intentional tort debts.
[Strano, supra, 248 B.R. at 501 (second emphasis added).]
Judge Lyons further reasoned that although the bankruptcy court has exclusive jurisdiction over dischargeability issues involving scheduled debts, "a debtor who fails to schedule an intentional tort debt... loses the benefits of ... the exclusive jurisdiction of the bankruptcy court." Id. at 502 (citing In re Mendiola, 99 B.R. 864, 868 n. 6 (Bankr.N.D.Ill.1989)).
As Judge Lyons recognized, the question of "exclusive jurisdiction over unscheduled intentional tort debts" has generated contrary decisions, among them, In re Padilla, 84 B.R. 194 (Bankr.D.Colo. 1987). We find Judge Lyons' holding convincing: "[F]or unscheduled intentional tort debts where the creditor had no knowledge of the bankruptcy, the bankruptcy court shares jurisdiction with other courts to determine dischargeability." Strano, supra, 248 B.R. at 502. Moreover, since defendants' bankruptcy discharges were issued in the District of New Jersey, it is appropriate that we rely on Strano to conclude that the Law Division judge here had jurisdiction to determine the dischargeability of the debt to Foley.

VI.
We remanded this matter temporarily in the expectation that the parties would provide the Law Division judge with additional briefing, and that the judge would provide us with findings of fact and conclusions of law to assist our review. But the Law Division judge heard no testimony and gave no reasons for his conclusion, after our remand, that "[c]learly the debt did not fall within any of the exceptions provided by § 523(a)(2), (4) or (6) of the Bankruptcy Code."[12]
Rule 1:7-4(a) provides, in pertinent part:
The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, [and] on every motion decided by a written order that is appealable as of right....
Our review of the decision to vacate plaintiff's judgment, which turns on the non-dischargeability question, is hampered by the absence of findings and a more complete record. See Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980).
Reversed and remanded for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] Only the individual defendant Elisa Rodriguez is a party to this appeal. The corporate defendant, Fevco, Inc., is apparently defunct and without assets. Mr. Goldberg filed a case information statement as well as a brief and appendix solely on behalf of Elisa Rodriguez Because both individual defendants appear to have been similarly situated, and in light of our decision reversing the order as to both defendants, we refer to Elisa Rodriguez and Milita Rodriguez in the plural as "defendants" in this opinion.
[2] The record does not inform us of defendants' precise relationship to Fevco, other than as guarantors of its debt to Foley.
[3] Counsel provided us with a copy of that order in response to our request at oral argument.
[4] Defendant Elisa Rodriguez filed a second bankruptcy petition. The record does not include a copy of that petition or any explanation for its filing. In that proceeding, the bankruptcy court issued an order on January 11, 2000, stating that the Model 963 was not part of Elisa's bankruptcy estate, but directing her to disclose its location within one month. She failed to surrender the collateral or disclose its location, and plaintiff filed a proof of claim on March 6, 2000. For reasons unexplained in the record, that bankruptcy petition was dismissed on March 22, 2000.
[5] Plaintiff filed an amended notice of appeal from the relevant orders.
[6] Judd does not turn on whether the creditor is secured or unsecured, but whether the debtor's chapter 7 bankruptcy is a "no asset" case.
[7] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109-8, § 1210, amended 11 U.S.C.A. § 524, those amendments are not pertinent to the issues before us. Moreover, this case is governed by the law in effect at the time each defendant's bankruptcy petition was filed. See Brown v. Felsen, 442 U.S. 127 n. 1, 99 S.Ct. 2205, 2208, 60 L. Ed.2d 767, 770 (1979).
[8] The record does not inform us of the precise relationship of each individual debtor to the corporation.
[9] We observe, however, that whereas proving an intentional tort in the Bankruptcy Court requires only a preponderance of the evidence, common law fraud under New Jersey law requires clear and convincing evidence. Compare In re Kielur, 323 B.R. 910, 914 (Bankr.W.D.Pa.2005) with Weil v. Express Container Corp., 360 N.J.Super. 599, 613, 824 A.2d 174 (App.Div.) ("[F]raud is never presumed, but must be established by clear and convincing evidence."), certif. denied, 177 N.J. 574, 832 A.2d 324 (2003).
[10] Judge Lyons compared the standard to be applied on such a discretionary decision to that which applies to an abstention decision. Strano, supra, 248 B.R. at 503.
[11] The real property (the proceeds of which plaintiff now seeks to recover) was listed in defendant Elisa's Schedule A (and apparently in Milita's as well). The bankruptcy court nonetheless determined the case was "no asset," and plaintiff has never moved to challenge that determination in the bankruptcy court.
[12] The Law Division judge's opinion ends with the statement: "Additionally, the court finds that the creditor, Foley, could have moved to reopen the case under § 727(d) or (e), but failed to do so."