

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-1996

# Judd v. Wolfe

Precedential or Non-Precedential:

Docket 95-5141

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Judd v. Wolfe" (1996). *1996 Decisions*. Paper 213.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/213

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

No. 95-5141
———————

SUSAN JUDD,

Appellant

vs.

LAWRENCE WOLFE

SUSAN JUDD,

Debtor
———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 94-cv-05574)
———————

Argued
January 25, 1996
Before:  STAPLETON, MANSMANN and LEWIS, Circuit Judges.

(Filed March 11, 1996)
———————

Joseph M. Pinto, Esquire (ARGUED)
Joseph F. Polino, P.C.
Moorestown Times Square
720 East Main Street
Suite 1C
Moorestown, NJ    08057

   COUNSEL FOR APPELLANT

George H. Hulse, Esquire (ARGUED)
Hulse & Germano
406 High Street
P.O. Box H
Burlington, NJ  08016

   COUNSEL FOR APPELLEE
———————

OPINION OF THE COURT


1

MANSMANN, Circuit Judge.


Debtor Susan Judd appeals from a decision of the district court, affirming the bankruptcy court's denial of her motion to reopen her bankruptcy case pursuant to 11 U.S.C. §350(b). Judd sought to reopen her no-asset Chapter 7 bankruptcy case for the sole purpose of amending her schedules to add a creditor whose name had been omitted.

We are confronted with a question of first impression for us: if a debtor, in a Chapter 7, no-asset, no-bar date bankruptcy proceeding fails to list a claim on its schedule of creditors and the bankruptcy case is closed, is the debt nonetheless discharged pursuant to 11 U.S.C. §§ 727(b) and 523(a)(3), or must the debtor move the bankruptcy court, pursuant to 11 U.S.C. § 350(b), for an order reopening the closed proceeding to add the omitted creditor for the purpose of discharging the claim?

We hold that in a no-asset, no-bar date case, dischargeability is unaffected by scheduling. After a case is closed, the debt in question was either discharged or excepted from discharge based on sections 523 and 727(b). Therefore, the filing of a motion to reopen is not necessary to discharge the debt if the statutory exceptions to discharge do not apply.

Susan Judd and Lawrence Wolfe were married on December 27, 1985. They separated on January 15, 1990 and subsequently were divorced on April 26, 1991.

After the parties separated, Judd remained in the marital home. On December 24, 1990, pursuant to Article 2, Paragraph 2.2 of the Property Settlement Agreement incorporated into their Final Judgment of Divorce, Wolfe executed a quitclaim deed which conveyed the marital home at 127 E. 7th Street, Burlington, New Jersey, to Judd. Judd agreed to assume responsibility to pay the outstanding mortgage and to indemnify Wolfe in the event that he had to make any payments on the mortgage.[0] Judd continued to pay the monthly mortgage payments on the home until February, 1993. On February 22, 1993, financial circumstances caused Judd to file a Chapter 7 petition in bankruptcy. Judd's Chapter 7 petition listed the home at 127 E. 7th Street as an asset on Schedule "A" of the petition, with a fair market value of $93,000.00, subject to a secured claim of $92,014.75. The first mortgagee on the property, Mortgage Access Corporation, was listed under Schedule "D" of Judd's petition as

---

[0] We recite the facts as Judd alleges them. It should be understood, therefore, that our recitation does not constitute findings.

[0] Prior to the marriage, the marital home was owned by Judd. Judd obtained the property through equitable distribution in a prior divorce proceeding.

In December, 1989, Judd conveyed an equal interest in the marital home to Wolfe. Upon this conveyance, the parties refinanced the existing first mortgage, borrowing additional money to consolidate debts and make home improvements. The parties executed a note and a mortgage.

a secured creditor with a claim of $92,014.75. Due to the fact that Wolfe was also obligated on the mortgage, this debt --listed as a home mortgage -- was listed as a joint debt on Schedule "D" of Judd's petition. Although her attorney listed the debt as a joint debt on Schedule "D" of the bankruptcy petition, he did not list Wolfe as a creditor or co-debtor. Because she had no other assets available for distribution to her creditors in bankruptcy, no bar date was set by the court establishing a deadline for creditors to file proofs of claim.

On February 25, 1993, after reviewing Judd's Chapter 7 petition, the Bankruptcy Court Clerk, in accordance with the applicable rules, notified the creditors listed in Judd's schedules of the date set for the meeting of creditors and the last day for the filing of complaints to determine the dischargeability of debts pursuant to 11 U.S.C. § 523(c). In accordance with Bankruptcy Rule 2002(e), no deadline for filing claims was set; rather, creditors were notified that it was unnecessary to file claims as there were no assets to distribute. However, in accordance with Bankruptcy Rule 4007(c), a deadline for filing complaints pursuant to 11 U.S.C. § 523(c) to determine the dischargeability of certain debts was set. This deadline of May 25, 1993, passed without any complaints being filed. On April 29, 1993 the trustee abandoned his interest in the marital home. On July 14, 1993, Judd received a Discharge in Bankruptcy. On July 16, 1993, Judd's case was closed.

In March, 1994, after Judd's bankruptcy case was closed, the first mortgagee, Mortgage Access Corporation, filed a

5

complaint in foreclosure listing both Judd and Wolfe as defendants. Subsequently, Wolfe sought indemnification from Judd pursuant to their property settlement.[0] Accordingly, on August 15, 1994, Judd filed a motion to reopen her Chapter 7 proceedings so that she could list Wolfe as a creditor and discharge her obligation to him. In his August 31, 1994, opposition, Wolfe alleged that he learned for the first time in July, 1994, that Judd had filed for bankruptcy, that she had not paid the mortgage for over one and one-half years, and that a complaint in foreclosure had been filed. According to Wolfe, despite the facts that Judd lives within a couple of miles of him, knows where he lives, has been to his home, knows where he works and knows his phone number, she never communicated anything to him regarding either her failure to make mortgage payments since January 1993 or the filing of the foreclosure suit.[0]

---

[0]

In July 1994, Wolfe filed a motion to enforce his rights under the Judgment of Divorce and Property Settlement Agreement in the Superior Court of New Jersey, Chancery Division, Burlington County. Wolfe asked the court to: (1) order Judd to satisfy the present mortgage arrearages for the former marital residence; or alternatively, direct Judd to execute a quit claim deed to the former marital residence in favor of Wolfe; (2) direct Judd to reimburse Wolfe for all costs he had or would incur with respect to the foreclosure of the property; (3) award Wolfe the immediate right of possession; (4) award Wolfe counsel fees; and (5) impose any other equitable relief the court deems just. Judd opposed Wolfe's motion. The motion was granted and the case is now pending before the Superior Court of New Jersey, Appellate Division.

[0] Upon obtaining all of this information, Wolfe contacted the mortgage company, which agreed to reinstate the mortgage if he cured the arrearages. He claimed he had the ability to obtain a home equity loan on his existing home for this purpose, but

6

Wolfe opposed Judd's motion to reopen on the grounds of unfair prejudice. Wolfe's primary concern was that his credit worthiness would be harmed as a result of Judd's failure to pay the mortgage. In addition, he was concerned that he would be liable for any deficiency at a foreclosure sale. Wolfe opined that if he had been listed as a creditor initially, he would have received notice of the bankruptcy and could have taken steps at that time to take over the property, pay the mortgage, avoid additional interest and penalties and avoid any damage to his credit.[0]

On September 12, 1994, finding that Wolfe had demonstrated that he would be prejudiced by a reopening, the bankruptcy court denied Judd's motion to reopen.[0] The bankruptcy

would only do so if he owned Judd's residence, which he was seeking in the state court action.

[0] Wolfe estimated that the mortgage arrearages for the property from January, 1993 to August 31, 1994, were over $20,000. Wolfe stated further that there was no equity in the property. The house was worth $96,000.00 with a principal balance of $92,000.00, plus the $20,000 in arrearages.

[0] Judd contended that she had given her attorney a copy of the Divorce Judgment and Property Settlement Agreement, quitclaim deed and mortgage payment slip, advising him that the debt to Mortgage Access Corporation was a joint debt with Wolfe. She asserted that she relied upon the expertise of her bankruptcy counsel and that she was not aware of the fact that Wolfe had not been listed as a creditor. In any event, she maintains the failure to list Wolfe was not done maliciously, intentionally or with an attempt to defraud or harm him.

[0] The bankruptcy court found that:

Here, there is no question that prejudice has been experienced by the potential creditor, in terms of the growth of the balance due to the mortgage company by the lack of

7

court subsequently denied Judd's motion for reconsideration filed pursuant to Local Bankruptcy Rule 3(b) and F.R.B.P. 8002(b).[0]

On appeal to the United States District Court, the court affirmed the bankruptcy court's order denying Judd's motion to reopen. In its decision, the district court did not reach the question of whether the debtor's obligations to Wolfe had been or

---

> information provided to the creditor in this obligation. She agreed to indemnify and hold harmless her ex-husband on this obligation, while he had availability to find out the status, he had no obligation to continue to review the status on an ongoing basis. On the other hand, it was her obligation to advise him, at least, that she would not be able to indemnify him or that the obligation was growing when she ceased payments in January 1993 and then filed a bankruptcy petition in '93, and I believe left the house in January of '94 or February, perhaps.
>
> I believe that there is insufficient basis to reopen the Chapter 7 case, primarily because the creditor has shown himself to be prejudiced by such a reopening, and I will deny the motion.

(JA 50-11 to 51-1).

[0] Specifically, the bankruptcy court found:

> And while you might say that accrual of interest in and of itself is not the -- sufficient prejudice, is not the kind of prejudice that would justify denying the reopening and an adding of a creditor. We looked at the global circumstances, if you will, to conclude that indeed, he was prejudiced, not only by the accrual of interest but -- the foregoing of options and by the negative impact on credit, that he

could have avoided at the time if he would have been proper named in the ordinary course. . . . If he had the burden of proof to show prejudice, he met that burden.

(JA 56-18 to 21).

should be discharged, after deciding that that question was not properly before the court. (JA 41).

The district court had jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and (c). We have jurisdiction pursuant to 28 U.S.C. § 158(d).


II.

We begin with an examination of the scope of the discharge Judd received from the bankruptcy court. Section 727(b) of the Bankruptcy Code defines the scope of a Chapter 7 debtor's discharge: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharged the debtor from all debts that arose before the date of the order for relief under this chapter . . . ." 11 U.S.C. §727(b). (Emphasis added.) As other courts have observed, "The operative word in this section is `all.'" In re Beezley, 994 F.2d 1433, 1435 (9th Cir. 1993) (citing In re Mendiola, 99 B.R. 864, 865 (Bankr. N.D. Ill. 1989) (regarding § 727(b), a pre-bankruptcy debt is discharged whether or not it is scheduled); In re Stecklow, 144 B.R. 314, 317 (Bankr. D. Md. 1992) ("breadth of the discharge" under section 727 is "comprehensive") and In re Thibodeau, 136 B.R. 7, 8 (Bankr. D. Mass. 1992) ("§ 727(b) itself makes no exception for unlisted debts")). Because section 727(b), on its face, does not create an exception for unlisted or unscheduled debts, every prepetition debt is discharged under section 727(b) subject to the provisions of section 523(a)(3). We thus turn to section 523(a)(3).

9

Section 523(a)(3) creates two categories of unscheduled debts: (1) those that are "of a kind specified in paragraphs (2), (4), or (6) of this subsection," and (2) those that are not of such kind.[0] Those debts that are not of the kind specified in paragraphs (2), (4), or (6) of section 523(a) are resolved by reference to section 523(a)(3)(A).

Section 523(a)(3)(A) excepts from discharge certain debts that were:

> Neither listed nor scheduled . . . in time to permit . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing . . . .

---

[0] Section 523(a) provides in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>
> (3) neither listed nor scheduled . . . in time to permit--
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6), of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such filing and request[.]

10

Because this is a "no-asset" Chapter 7 case, the time for filing a claim has not, and never will, expire unless some exempt assets are discovered; thus, section 523(a)(3)(A) cannot be applied in Judd's circumstances.  See Stone v. Caplan, 10 F.3d 285, 289, n.13 (5th Cir. 1994) (observing that if no proof-of-claim deadline has ever been set, section 523(a)(3)(A), by its own terms, is inapplicable).  Because section 523(a)(3)(A) does not apply here, Judd's debt to Wolfe was discharged by operation of law at the time of her discharge on July 14, 1993, unless her debt to Wolfe falls under sections 523(a)(2), (4), or (6).

Debts listed in sections 523(a)(2), (4) and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by "false pretenses, false representation or actual fraud . . . " (523(a)(2)); debts incurred by "fraud or defalcation while acting as a fiduciary . . ." (523(a)(4)); and debts "for willful and malicious injury . . ." (523(a)(6)).  Section 523(a)(3)(B) excepts from discharge "intentional tort" debts that were not listed.  Since section 523(c) provides that the dischargeability of these debts must be determined by the bankruptcy court and Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523(a)(3)(B) preserves the right of these creditors to litigate the dischargeability of their debts.

For most creditors, the fundamental right enjoyed in bankruptcy is the right to file a proof of claim because filing a claim is obviously necessary in order to participate in the

11

distribution of the estate's assets.[0] <u>In re Stark</u>, 717 F.2d 322 (7th Cir. 1983). Section 523(a)(3)(A) honors this right, by excepting from discharge, debts owed to creditors who did not know about the case in time to file a claim. In a case where there are no assets to distribute, however, the right to file a proof of claim is a hollow one.[0] An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim. Thus, in a no-asset Chapter 7 case where no bar date has been set, we conclude that there would be no purpose served by reopening a

---

[0]        For creditors holding intentional tort claims, the right to file a proof of claim exists parallel to the creditor's right to secure an adjudication of non-dischargeability. Accordingly, section 523(a)(3)(B) excepts intentional tort debts from discharge notwithstanding the creditor's failure to file a timely complaint under section 523(c), if the creditor did not know about the case in time to file such a complaint. 11 U.S.C. § 523(c). We do not understand Wolfe to be asserting such a claim before us at this time.

        As § 523(a)(3)(B) applies only when the omitted claim is one which might have been excepted from discharge if the creditor had the opportunity to timely file a complaint under §523(a)(2), (4) or (6), and as Wolfe has conceded that he is not asserting such a cause of action, § 523(a)(3)(B) is inapplicable.
[0]        In recognition of this, Bankruptcy Rule 2002(e) allows a court to dispense with the necessity of filing proofs of claim in a no-asset case. Bankruptcy Rule 2002(e) provides:

          In a Chapter 7 liquidation case, if it
          appears from the schedules that there are no
          assets from which a dividend can be paid, the
          notice of the meeting of creditors may
          include a statement to that effect; that it
          is unnecessary to file claims; and that if
          sufficient assets become available for the
          payment of a dividend, further notice will be
          given for the filing of claims.

case to add an omitted creditor to the bankrupt's schedules. If the debt at issue is not a debt described under section 523(a)(2), (4) or (6), the debt has been discharged by virtue of section 727(b), whether or not it was listed. If, however, the debt is a debt that falls under sections 523(a)(2), (4) or (6), the debt is not discharged by virtue of section 523(a)(3)(B).

## III.

Believing that reopening her case and amending her schedules was necessary in order to discharge her debt to Wolfe, Judd moved to reopen her case pursuant to section 350(b) of the Bankruptcy Code. This section provides that a bankruptcy case may be reopened ". . . to administer assets, to accord relief to the debtor or for other cause". 11 U.S.C. § 350(b).

Apparently, both the debtor and the creditor here labored under the misapprehension that the issue of whether Wolfe's claim was or was not discharged would be resolved, either explicitly or implicitly, by the court's decision on Judd's motion to reopen pursuant to 11 U.S.C. § 350(b). It appears that the bankruptcy judge also assumed that if Wolfe was not listed as a creditor, his claim would not be subject to discharge. Because we have concluded that the issue of whether Wolfe's claim under the Property Settlement Agreement was or was not discharged, notwithstanding its lack of scheduling, is resolved by sections

13

727(b) and 523(a)(3)(A) of the Bankruptcy Code, Judd's motion to reopen was unnecessary.[0]

Our interpretation of sections 727(b) and 523(a)(3) is consistent with that of the Court of Appeals for the Ninth Circuit. In In re Beezley, 994 F.2d 1433 (9th Cir. 1994), the debtor, Gilbert Beezley, appealed a decision affirming the bankruptcy court's denial of his motion to reopen his bankruptcy case pursuant to 11 U.S.C. § 350(b), arguing that the bankruptcy court abused its discretion by failing to grant his motion to reopen. Based upon the assumption that an amendment was necessary to discharge a debt, Beezley sought to add an omitted debt to his schedules. Beezley's case, like ours, was a no-asset, no-bar date Chapter 7 case. The Court of Appeals concluded that after such a case is closed, dischargeability is unaffected by scheduling if the omitted debt is the type of debt covered by 11 U.S.C. § 523(a)(3)(A), because it has already been discharged pursuant to 11 U.S.C. § 727(b). The court noted as well that if the debt is the type of debt covered by 11 U.S.C.

---

[0]      See In re Mendiola, 99 B.R. 864, 865 (Bankr. N.D. Ill. 1989) (reopening the case to amend schedules would not affect the rights or liabilities of the parties, but would be an exercise in futility); In re Karamitsos, 88 B.R. 122 (Bankr. S.D. Tex. 1988) (the filing of an amended creditor schedule after discharge has been granted in a no-asset Chapter 7 case has absolutely no effect on the dischargeability of the debt); In re Guzman, 130 B.R. 489 (Bankr. W.D. Tex. 1991) (scheduling or not scheduling a creditor has no impact on whether the creditor's claim is discharged; § 727 extends discharge to all prepetition debts and applies without regard to whether the debt is listed in the schedules). Accord In re Thibodeau, 136 B.R. 7 (Bankr. D. Mass. 1992); In re Anderson, 72 B.R. 495 (Bankr. D. Minn. 1987); In re Peacock, 139 B.R. 421 (Bankr. E.D. Mich. 1992).

14

§523(a)(3)(B), then it has not been discharged and is non-dischargeable.[0]

In an attempt to evade Beezley's application to his case, Wolfe argues that his case has substantial factual differences from Beezley and the typical no asset case where the unscheduled creditor has either a judgment, a liquidated money claim or is a party to a consumer transaction with the debtor. Rather here, observes Wolfe, the debtor and the creditor were previously married, divorced, and the "claim" which the debtor is attempting to discharge is an indemnification agreement for a joint mortgage obligation incorporated into a Judgment of Divorce. According to Wolfe, the relationship of the parties, the nature of the underlying debt at issue and the debtor's breach of the Property Settlement Agreement cry out for the "equitable approach" adopted by other courts and not the strictly mechanical approach of Beezley. See, e.g., Stark v. St. Mary's Hospital, 717 F.2d 322 (7th Cir. 1983) (holding in a no-asset bankruptcy case a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design); Robinson v. Mann, 339 F.2d 547 (5th Cir. 1964) (noting in exceptional circumstances, the bankruptcy court may exercise its equitable discretion to allow amendment, considering the

---

[0]    In view, however, of allegations of fraud in the transaction that gave rise to the underlying claim, the court did not decide whether the particular debt at issue was discharged. See In re Beezley, 994 F.2d at 1441. There, the creditor, Cal Land, in a memorandum filed in opposition to Beezley's motion to reopen, advised the court that it would seek to establish that the debt was nondischargeable under section 523(a)(3)(B).

15

factors offered in justification of the failure to list the creditor in question: the failure of counsel to have originally listed the creditor, the degree of disruption which would result from allowing the amendment, and whether any creditor including the unlisted creditor would be prejudiced thereby); Stone v. Caplan, 10 F.3d 285 (5th Cir. 1994) (allowing out-of-time amendments if exceptional circumstances and equity require it). Because these cases supplant the analysis required under section 727(b) and section 523 and substitute a test involving equitable considerations completely foreign to these sections of the Bankruptcy Code, we disagree.

We decline to hold that the issue here, whether Judd's debt to Wolfe is discharged pursuant to sections 523(a)(3)(A) and 727(b), turns on whether the omission of Wolfe from Judd's schedules was made in good faith, for the Bankruptcy Code does not impose a requirement of good faith for the discharge of an omitted debt in a no asset, no bar date case. "No where in section 523(a)(3) is the reason why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt." In Re Beezley, 944 F.2d at 1439. As the Court of Appeals for the Ninth Circuit observed there, such a holding would interpose "an equitable barrier between the debtor and his discharge that Congress simply did not enact in the Bankruptcy Code." Id.

The plain language of section 523(a)(3) represents a congressional policy choice. Clearly, Congress could have exempted from the debtor's discharge, pursuant to sections 727(b)

16

and 523, debts that were omitted intentionally, rather than merely inadvertently, from the debtor's schedules. Congress chose not to do so. Unless Wolfe can show that his claim falls under the statutory exceptions of section 523(a)(2), (4), or (6), his debt has been discharged by operation of law. Wolfe has declined to do so.

We review a bankruptcy court's refusal to reopen a closed case pursuant to 11 U.S.C. § 350(b) for abuse of discretion. Fourteenth Avenue Security Loan Ass'n v. Squire, 76 F.2d 799 (3d Cir. 1938); Matter of Gershenbaum, 598 F.2d 779 (3d Cir. 1979). Having concluded that Judd's debt to Wolfe was discharged by application of statute, we hold that the bankruptcy court did not abuse its discretion in declining to reopen her case.[0]

IV.

At oral argument, Judd further argued that although amending her schedules at this juncture would not affect the discharge of her debt to Wolfe, we should nonetheless remand this case so that the bankruptcy court may reconsider whether or not to reopen Judd's bankruptcy case for the limited purpose of adding Wolfe's name to Judd's list of creditors. Judd asserts that as a practical matter, it is important for her to have all of her creditors listed so that her schedules accurately reflect

---

[0] We note that the bankruptcy court's findings with respect to any prejudice suffered by Wolfe are of no moment. The type of prejudice alleged by Wolfe is legally irrelevant to discharge pursuant to sections 727(b) and 523.

17

the discharge of her debts. Judd asserts that, as a condition of acquiring new credit, prospective lenders may require that all discharges appear on her schedules. Because section 350(b) of the Bankruptcy Code permits the court to reopen a case "to accord relief to the debtor, or for other cause", Judd's arguments may have merit in this regard.

Here, we are unable to determine whether there may be such cause to reopen this matter. In any event, this issue is best addressed by the bankruptcy court in the first instance.

We note, however, that allowing Judd to list all of her discharged creditors is in keeping with the practical considerations pertinent to Chapter 7 debtors, and in keeping with the primary purpose of the Bankruptcy Act of affording debtors a fresh start. See, e.g., In re McKinnon, 165 B.R. 55 (Bankr. D. Maine, 1994) (maintaining the accuracy of a debtor's schedules is sufficient cause to reopen a no-asset case). Not only will amending Judd's schedules ensure the comprehensiveness of her Chapter 7 discharge, making it easier for her to obtain credit in the future, but amending her schedule to add Wolfe as a creditor also ensures that if assets are later discovered, Wolfe would receive notice to file a proof of claim, enabling him to participate in any distribution of Judd's assets. See In re Henson, 70 B.R. 363 (Bankr. N.D. Ill. 1987). These are considerations which, we are confident, the bankruptcy court will consider. We will thus vacate the district court's order and remand this case to the district court for reference to the bankruptcy court.