**In re James W. MARSHALL, Debtor.**

No. 94–11695.

United States Bankruptcy Court, D. Kansas.

Nov. 14, 2003.

712

U.S.C. § 350(b) in order to schedule and discharge an unscheduled debt (*i.e.* a post-petition default judgment entered against debtor in favor of United States Fidelity & Guaranty Co. ("USFG"), arising out of debtor's prepetition agreement to indemnify USFG under a retailers' sales tax bond).[1] This contested matter is submitted to the Court on the parties' briefs and written stipulations of fact.[2]

## I. *Factual Background*

The salient facts are these. The debtor, along with two other individuals, formerly ran a car dealership in El Dorado, Kansas known as Marshall Blain Chevrolet, Inc. On May 1, 1987, a retailers' sales tax bond in the amount of $15,000 was issued in favor of the State of Kansas with USFG, as surety, and Marshall Blain Chevrolet, Inc., as principal. In conjunction with the issuance of the sales tax bond, the debtor agreed to indemnify USFG for any claims arising under the bond. At the time that Marshall Blain Chevrolet, Inc. ceased doing business in late 1993 or early 1994, it owed sales taxes for the months of June, July and August, 1993 to the State of Kansas in an amount in excess of the bond.

On July 8, 1994, the debtor filed bankruptcy under chapter 7. USFG was not scheduled as a creditor and did not have actual knowledge of debtor's bankruptcy. The debtor's bankruptcy case was administered as a no asset case. The debtor was granted a discharge on January 30, 1995 and the case was closed.

On November 7, 1997 USFG paid $15.000 to the State of Kansas to satisfy its surety obligations under the retailers'

William H. Zimmerman, Jr., Case, Moses, Zimmerman & Wilson, P.A., Wichita, KS, for Debtor.

Lynn D. Allison, Attorney at Law, Wichita, KS, trustee.

## *MEMORANDUM OPINION*

ROBERT E. NUGENT, Chief Judge.

The debtor James W. Marshall moves to reopen his bankruptcy case pursuant to 11

---

1. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise specified.

2. The Court has jurisdiction over this case and matter pursuant to 28 U.S.C. § 157 and § 1334.

sales tax bond.[3]  The State of Kansas released USFG of further liability under the bond and assigned to USFG its rights against all persons or corporations who caused or benefitted from the loss.  Thereafter, USFG made demand upon the debtor without success to reimburse it for the bond loss.

In 2000, USFG commenced a lawsuit against debtor in state court.  USFG asserted a claim against the debtor for indemnification in the amount of $15,000, together with interest and other contractual expenses.  The debtor defaulted in the state court case.  On April 24, 2000, USFG obtained a judgment against the debtor in the state court action.  This judgment remains unsatisfied.

On April 19, 2002, the debtor filed a motion to reopen his case pursuant to § 350(b) in order to schedule the USFG debt.

## II.  *Discussion and Analysis*

The debtor asks this Court to reopen his bankruptcy case and determine that the unscheduled USFG debt was discharged by his 1994 bankruptcy, citing *Judd v. Wolfe (In re Judd).*[4]  The debtor contends that this unscheduled debt was discharged when debtor received his chapter 7 discharge in 1995 because the debt is not one that could have been excepted from discharge under § 523(a)(2), (4) or (6).[5]  USFG counters that the debt did not come into existence until 1997, long after debtor's bankruptcy and therefore could not have been discharged in debtor's bankruptcy.  USFG further claims that it would be prejudiced by reopening the debtor's bankruptcy case because in the

intervening five years, debtor's financial situation has improved such that non-exempt assets are available to pay the debt.  USFG makes no argument that the § 523(a)(2), (a)(4) or (a)(6) exceptions to discharge would have applied to the debt had it known of debtor's bankruptcy.

### A.  The USFG Debt as a Prepetition or Post–Petition Debt.

The Court first addresses USFG's argument that the debt in question is not a prepetition debt that was discharged in debtor's bankruptcy.  If USFG is correct that the subject debt is a post-petition debt, the Court need not reach an analysis of the statutory discharge exceptions under § 523.

■  The scope of the debtor's discharge is set forth in § 727(b), which provides:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose *before the date of the order for relief* under this chapter ...

Thus, all *prepetition* debts are discharged under § 727(b), subject only to the § 523 exceptions from discharge.

In his brief, the debtor does not analyze whether the USFG debt is a prepetition debt.  USFG asserts, without citation to any legal authority, that its claim against debtor arose post-petition in November 1997 when it paid the State of Kansas on the bond claim.  The Court has conducted its own research to determine when USFG's claim against debtor arose.  The answer is found in the Tenth Circuit Bankruptcy Appellate Panel ("BAP") decision

---

3.  Although not entirely clear, it appears that this payment was attributed to and made as a result of Marshall Blain Chevrolet, Inc.'s failure to remit to the State of Kansas, sales tax for the periods June, July and August of 1993.

4.  78 F.3d 110 (3rd Cir.1996).

5.  *See* § 523(a)(3) and § 727(b).

*Watson v. Parker (In re Parker)* [6] as affirmed by the Tenth Circuit Court of Appeals ("Tenth Circuit").[7]

Like USFG in the instant case, the creditor in *Parker* argued that her debt was not discharged by the debtor's bankruptcy because her claim arose post-petition. In *Parker*, the BAP undertook an analysis of when the creditor's claim arose to determine whether it was a prepetition debt that had been discharged by operation of § 727(b). In that case, the debt was based upon a legal malpractice claim against the debtor attorney.

The BAP reviewed the two lines of cases for determining when a "claim" arises: (1) the accrual theory and (2) the conduct theory.[8] In rejecting the accrual theory and adopting the conduct theory, the court noted that the accrual theory, which looks to state law to determine when a "right to payment" arises, is the minority view.[9] Under the conduct theory, a claim arises at the time of the debtor's conduct that gives rise to the claim.[10] Thus, the timing of the debtor's conduct that gives rise to the cause of action determines whether the claim is pre or post-petition. The court explained why it was inappropriate to look to state law to determine when a bankruptcy claim exists.

> Because the Bankruptcy Code expressly delineates the boundaries of the term claim, the issue of whether a claim is valid under state law is not the primary inquiry for a bankruptcy court when determining whether a claim against a debtor is a bankruptcy claim under the

Code. The central issue for a bankruptcy court is whether a claim as defined by the Bankruptcy Code existed pre-petition. We find that pursuant to the plain language of the statute, a claim will exist if some prepetition conduct has occurred that will give rise to liability.[11]

The BAP focused upon the expansive definition of "claim" under the Bankruptcy Code. A "claim" is defined in § 101(5) as a:

> ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;

A "debt" under the Bankruptcy Code means "liability on a claim." [12] The court noted that a contingent claim, as defined by Black's Law Dictionary, was a claim that had not yet accrued and was dependent upon a future event that may or may not occur.

The court then proceeded to evaluate the creditor's legal malpractice claim in *Parker* under the conduct theory. In 1995, the creditor Watson retained the debtor attorney and filed a lawsuit against her employer in federal court. The debtor attorney failed to serve the employer with a copy of the summons and complaint, failed to respond to an order to show cause, and the case was subsequently dismissed in May, 1996. The debtor attorney filed a no asset chapter 7 bankruptcy on November 26, 1996. Watson was not listed as a creditor in debtor's bankruptcy case. In December 1996 the debtor attor-

---

6.   264 B.R. 685 (10th Cir. BAP 2001).

7.   313 F.3d 1267 (10th Cir.2002).

8.   264 B.R. at 695–96.

9.   *Id.* at 696.

10.   Here, by arguing that the 1997 date USFG paid its surety obligation under the bond,

even though the payment was a result of unpaid sales tax for the period 1993, USFG appears to be advocating the accrual theory.

11.   264 B.R. at 697.

12.   11 U.S.C. § 101(12).

ney admitted that he had committed malpractice in Watson's case. Watson terminated debtor as her attorney in February 1997. Debtor received his discharge on May 14, 1998. In July 1998, Watson brought a state court malpractice lawsuit against the debtor. The debtor answered and asserted that Watson's malpractice claim had been discharged by the bankruptcy.

The BAP agreed, concluding that Watson's malpractice claim was a prepetition claim.

> Here, Watson's Claim involves legal representation that occurred pre-petition. Regardless of when the Kansas statute of limitations began to run, Watson had a contingent claim against the Debtor at the moment the debtor engaged in the conduct that formed the basis for malpractice liability. As established by the record, the malpractice occurred in May 1996, when the Debtor failed to respond to the Show Cause Order, resulting in the dismissal of the Federal Case. At that time, at a minimum. Watson had a contingent prepetition claim against Debtor. When in November 1996, the Debtor filed under Chapter 7 of the Bankruptcy Code, this Claim was a claim against the Debtor's bankruptcy estate.[13]

The Tenth Circuit affirmed the BAP and adopted the conduct theory for determining whether a debt is prepetition or postpetition.[14]

■ Applying *Parker* and the conduct theory to USFG's indemnification claim in the case at bar yields the conclusion that the USFG debt is a prepetition debt subject to § 727(b). The debtor's agreement to indemnify USFG for any claims under the retailers' sales tax bond was entered into prepetition in 1987. At the moment that the principal Marshall Blain Chevrolet, Inc. failed to remit the 1993 sales taxes for June, July and August. USFG had an indemnification claim against the debtor, contingent upon whether USFG would have to pay the bond claim to the State of Kansas. The conduct which gives rise to USFG's indemnification claim and state court judgment, is the debtor's indemnification agreement and nonpayment of the 1993 sales tax—both of which occurred prior to debtor's bankruptcy in July 1994. Accordingly, this Court concludes that USFG's indemnification claim against the debtor is a prepetition claim within the meaning of § 101(5).

Having concluded that the unscheduled USFG debt was a prepetition debt that may be discharged under § 727(b), the Court must now address whether any of the statutory exceptions to discharge are applicable to the USFG debt.

### B. Section 523(a) Statutory Exceptions to Discharge.

As noted above, § 727(b) discharges all prepetition debt "[e]xcept as provided in section 523." Section 727(b) makes no mention of whether the prepetition debt must be scheduled in order to be discharged.

### 1. Unscheduled Debts—Section 523(a)(3)(A).

Section 523(a)(3), however, addresses unscheduled debts and their exception from discharge under § 727(b):

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—...
>
> (3) neither listed nor scheduled ... in time to permit—

---

**13.** *Id.* at 698.

**14.** 313 F.3d at 1269–70.

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

Because USFG does not assert that the unscheduled debt here is of a type described in § 523(a)(2), (a)(4), or (a)(6), § 523(a)(3)(B) is inapplicable and the Court is left to consider (a)(3)(A).

The debtor, citing *Judd v. Wolfe (In re Judd)* [15] contends that § 523(a)(3)(A) is also inapplicable because the claim bar date has never run in debtor's bankruptcy case. In a no asset chapter 7 case a claim bar date is never set and the bar date never runs.[16] Section 523(a)(3)(A) is therefore inapplicable. As a result, debtor argues that the unscheduled prepetition USFG debt was discharged under § 727(b).

In *Parker, supra* [17], the BAP and Tenth Circuit adopted the majority view articulated by *In re Judd* and other circuits.[18]

The majority view holds that the debt is discharged by operation of law (*i.e.* § 727(b)) and that to reopen a bankruptcy case to schedule a previously unlisted debt in a no asset, no bar date case, has no effect on the dischargeability of the debt.[19] The rationale behind this result is that the creditor suffers no prejudice because if any assets are subsequently discovered, the creditor will have an opportunity to file a claim.[20] Accordingly, the unscheduled prepetition USFG debt was discharged by virtue of § 727(b) unless excepted from discharge under another statutory exception.

### 2. Tax Debts—Section 523(a)(1)

Neither party has addressed any other § 523 discharge exception apart from the unscheduled debt exception found in § 523(a)(3). However, the Court considers the discharge exception regarding tax debts pertinent. The language of § 727(b) prescribing the scope of a discharge does not on its face indicate that any of the statutory discharge exceptions in § 523(a) take precedence over each other. In other words, the fact that the unscheduled debt exception in § 523(a)(3) is inapplicable does not foreclose the Court from considering alternative discharge exceptions, including tax debts under § 523(a)(1).[21]

---

**15.** 78 F.3d 110 (3rd Cir.1996).

**16.** *See* Fed. R. Bankr.P.2002(e).

**17.** 264 B.R. 685, 694–95 (10th Cir. BAP 2001), *affirmed* 313 F.3d 1267, 1269 (10th Cir.2002).

**18.** *See also. Beezley v. Calif. Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993); *Zirnhelt v. Madaj (In re Madaj),* 149 F.3d 467 (6th Cir.1998).

**19.** *See Judd,* 78 F.3d at 114; *Beezley,* 994 F.2d at 1434; *Madaj,* 149 F.3d at 470.

**20.** *Parker,* 264 B.R. at 695 and 313 F.3d at 1269. *See also,* Fed. R. Bankr.P. 3002(c)(5).

**21.** Nor does it appear that the bankruptcy court is precluded from determining dischargeability of the USFG debt in this contested matter. The USFG debt is not of the kind requiring a dischargeability complaint to be filed by the creditor in order to be excepted from discharge. *See* § 523(c)(1); Fed. R. Bankr.P. 4007.

■ USFG's judgment is a debt arising from the debtor's liability for the car dealership's unpaid sales taxes. The Kansas Retailers' Sales Tax Act ("Act") is found at KAN. STAT. ANN. § 79–3601 *et seq.*[22] Under the Act, the retailer is required to collect the sales tax from the consumer and remit to the director of taxation.[23] Personal liability for sales taxes is imposed upon individuals responsible for collecting and paying the sales tax regardless of the individual's relationship with the retailer.[24] The debtor is a "responsible individual" subject to personal liability for the unpaid sales taxes.[25]

■ Section 523(a)(1)(A) of the Bankruptcy Code excepts from discharge, certain types of taxes:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

Sales taxes arguably fall under at least two categories of taxes described in § 507(a)(8): (1) "trust fund" taxes;[26] or (2) excise taxes.[27] There is no "age" limit on trust fund taxes while excise taxes are dischargeable if the return was last due after three years before the case was filed. Trust fund taxes are never discharged, regardless of their age. Excise taxes, on the other hand, are dischargeable if more than three years old.[28]

■ The overwhelming weight of authority holds that sales taxes are trust fund taxes covered by § 507(a)(8)(C), not § 507(a)(8)(E).[29] When § 523(a)(1)(A) and § 507(a)(8)(C) are read together then, a debtor's liability for unpaid sales taxes is excepted from the debtor's discharge. Here, debtor's sales tax liability was excepted from debtor's discharge under § 727(b) and debtor remained liable for

22. Under the Act, the secretary of revenue is charged with the responsibility of administering and enforcing the act and is authorized to adopt rules and regulations for administering the Act. *See* KAN. STAT. ANN. § 79–3618 (2002 Supp.). The regulations implementing the Act are found at KAN. ADMIN. REG. (2000) § 92–19–1b *et seq.*

23. *See* KAN. STAT. ANN § 79–3604 (1997).

24. *See* KAN. STAT. ANN. § 79–3643 (2002 Supp.); KAN. ADMIN. REG. § 92–19–64a (2002 Supp.) (defining "responsible individual" for purposes of § 79–3643).

25. *See also*, KAN. ADMIN. REG. § 92–19–64 (2000), the predecessor regulation subjecting corporate officers to personal liability for unpaid sales taxes. This regulation was revoked July 27, 2001 and replaced by KAN. ADMIN. REG. § 92–19–64a (2002 Supp.).

26. Section 507(a)(8)(C) describes this tax as "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."

27. § 507(a)(8)(E)(i) describes an excise tax as a tax on "a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition."

28. In this case, the sales taxes in question were for the time period 1993 and the bankruptcy was filed in 1994. Even if the sales taxes are considered as excise taxes under § 507(a)(8)(E)(i), because the sales taxes are less than three years old, they would not, by definition, be dischargeable. Thus, under the facts of this case whether the taxes are treated as trust fund taxes or excise taxes, they are nondischargeable.

29. *See Shank v. Washington State Dept. Of Revenue, Excise Tax Div. (In re Shank)*, 792 F.2d 829 (9th Cir.1986); *DeChiaro v. New York State Tax Com'n*, 760 F.2d 432 (2nd Cir.1985); *Rosenow v. State of Ill. Dept. of Revenue*, 715 F.2d 277 (7th Cir.1983); *In re Kelley*, 171 B.R. 113 (Bankr.N.D.Okla.1994).

the 1993 sales taxes after his 1995 discharge.

■ This leaves the question of whether it matters that USFG, and not the State of Kansas, is the creditor asserting the claim in this case.[30] Under the retailers' sales tax bond, USFG, as surety, was subrogated to the State of Kansas with respect to sales taxes it paid on behalf of the principal under the bond. The issue becomes whether a creditor can be subrogated to the taxing authority's right to assert nondischargeability of the tax debt. On this issue, there appears to be a split in authority.[31]

In *Western Surety Company v. Waite (In re Waite),*[32] the Eleventh Circuit Court of Appeals held that a surety that had paid the debtor's liquor sales tax liability to the State of Tennessee was subrogated to the right of the taxing entity to prevent discharge of the tax debt, citing *Gilbert v. United States Fidelity & Guaranty Co.*[33] In *Waite,* the court noted that § 507(d) of the Bankruptcy Code expressly limits the rights of subrogees relative to *priority* of claims, but it does not preclude the surety from asserting *nondischargeability* of the debt.[34] The facts in *Waite* are strikingly similar to the facts in the case at bar. Other courts are in accord with *Waite.*[35]

In this district, Judge Pusateri decided *Woerner v. Farmers Alliance Mutual Ins.*

Co. *(In re Woerner)*[36] consistent with *Waite* and the majority view. He recognized a surety's right to be subrogated to the nondischargeability rights of the taxing entity where it had paid the debtor's fuel tax debt to the State, citing § 509(a). Also consistent with *Waite,* Judge Pusateri held that the surety did not receive a priority claim by virtue of subrogation under § 507(d) but succeeded only to the taxing entity's nondischargeability rights.[37] Nor did the fact that the surety received an assignment of the claim from the taxing authority alter this result. The court concluded that where a right to subrogation exists, an assignment adds nothing to that right. Recovery is by virtue of a right in equity and not by virtue of a legal right under an assignment.[38]

Based upon the above weight of authority the Court concludes that USFG is subrogated to the State of Kansas and has a nondischargeable sales tax debt. As explained previously, the USFG debt is excepted from debtor's discharge under § 523(a)(1)(A) and § 507(a)(8)(C), and USFG *can* continue to enforce or collect its state court judgment against debtor.

### C. Debtor's Motion to Reopen.

■ In light of this Court's determination that the USFG debt is nondischarge-

---

**30.** Section 507(a)(8) refers to "allowed unsecured [tax] claims of *governmental units.*"

**31.** The Court's independent research revealed no controlling Tenth Circuit authority on this issue.

**32.** 698 F.2d 1177 (11th Cir.1983).

**33.** 274 F.2d 823 (5th Cir.1960).

**34.** *Waite,* 698 F.2d at 1178.

**35.** *See Hartford Casualty Insurance Co. v. Fields (In re Fields),* 926 F.2d 501 (5th Cir. 1991) (debtor argued unsuccessfully that the

debt due Hartford arose from an indemnity agreement rather than as a tax and since Hartford was not a taxing authority it could not prevent dischargeability). The *Fields* court noted that the majority of courts that have addressed this issue have held that a surety is subrogated to the nondischargeability rights of the taxing authority, 926 F.2d at 504 n. 8. *But see National Collection Agency, Inc. v. Trahan,* 624 F.2d 906 (9th Cir.1980).

**36.** 19 B.R. 708 (Bankr.D.Kan.1982).

**37.** *Id.* at 711–12.

**38.** *Id.* at 712.

able, it would be futile to reopen debtor's bankruptcy case and schedule the USFG debt. Section 350(b) permits a bankruptcy court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." Here, the lack of scheduling of the USFG debt has no effect on its nondischargeability. Reopening debtor's case to schedule the USFG debt now will not alter the fact that it remains nondischargeable under § 523(a)(1)(A).[39] Thus, no relief can effectively be given to the debtor. Accordingly, the debtor's motion to reopen is DENIED.

---

**39.** *See Wolfe,* 78 F.3d at 115–116; *Beezley,* 994 F.2d at 1434; *Madaj,* 149 F.3d at 472.