**In re Jerry D. JOHNSON, Debtor.**

No. 5:13–bk–70187.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Signed Oct. 28, 2014.

Forrest L. Stolzer, Wayne Young Law Firm, Fayetteville, AR, for Debtor.

Roger B. Harrod, Little Rock, AR, for DWS.

## ORDER

BEN BARRY, Bankruptcy Judge.

Before the Court is a *Motion For Contempt* filed by the debtor on August 7, 2014, against creditor Arkansas Department of Workforce Services [DWS]. In his motion, the debtor alleges that DWS violated the Court's discharge order dated April 23, 2013, by obtaining and refusing to return the debtor's tax refunds for the 2012 tax year. DWS filed its *Amended Response to Motion For Contempt* on August 20, 2014. The Court heard the motion and response on October 1, 2014. At the conclusion of the hearing, the Court took the motion under advisement. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014. For the reasons stated below, the debtor's motion for contempt is denied.

## BACKGROUND

The following background facts come, generally, from the undisputed allegations contained in the debtor's motion and DWS's response to that motion. The debtor. filed his voluntary chapter 7 bankruptcy petition on January 18, 2013. In his petition, the debtor "nominally listed" DWS as a creditor with an address of P.O. Box 8090 in Little Rock, Arkansas. The correct address for DWS is P.O. Box 8060 in Little Rock.[1] The debtor also listed his

1. According to the debtor's motion for contempt, P.O. Box 8090 was actually the ad-   dress of Arkansas Department of Finance and Administration, "a separate state agency that

anticipated 2012 tax refunds on his petition and claimed a corresponding exemption for the refunds. The trustee entered his report of no distribution on February 19, 2013, and the Court entered its order of discharge on April 23, 2013.

The debtor scheduled DWS in his bankruptcy schedules as a secured creditor having a lien on miscellaneous personal property with a secured claim of $4369.06 and a total claim of $8823.00. The claim is based on a discrepancy between income the debtor reported to DWS and income the debtor's employer reported to DWS. On February 6, 2013, pursuant to an Arkansas statute and in partial satisfaction of its claim, DWS received from the U.S. Department of Treasury the sum of $3211.00, which was the entire amount of the debtor's 2012 federal tax refund. Later that same month, DWS received an additional $136.00, representing the debtor's entire 2012 state tax refund. DWS has declined to forward the money it received from the governmental agencies to the debtor, resulting in the present motion for contempt filed by the debtor.

**ARGUMENTS OF THE PARTIES**

The debtor filed his motion for contempt against DWS for violation of the discharge injunction by failing to return the money that was forwarded to DWS as partial recompense for a pre-petition obligation. The debtor's argument is based on what he calls the "no-asset rule." According to the debtor, even though DWS may not have received notice of the debtor's bankruptcy case, because the debtor's case was a no-asset case, there would not be a time limit for creditors to file a claim. In that instance, § 523(a)(3)(A)—the section that provides that a creditor's claim is nondischargeable if the creditor did not receive notice of the filing—would not be applicable. The debtor recognizes that subsection (a)(3)(B) is an exception to the "no-asset rule," but argues that in order for subsection (a)(3)(B) to apply, there would first have to be a judicial determination of fraud, and that would require a court hearing. The debtor believes that as soon as DWS learned of the debtor's discharge, it should have forwarded to the debtor the funds it had received and then filed an adversary proceeding to determine the dischargeability of its debt. The debtor also argued that because the debtor's prior counsel had an incorrect address in his Best Case® database for the "nominally listed" DFS, the debtor should not be held accountable that the debtor's notice of bankruptcy filing went to the wrong address. Finally, although not argued at the hearing, the debtor also suggests in his motion for contempt that the address of DWS listed by the debtor on his petition was sufficient because ADFA is closely related to the DWS both geographically and in terms of governmental hierarchical organization.

The creditor, DWS, simply argued that it should have been notified of the debtor's bankruptcy filing and given the opportunity to file an adversary proceeding to determine the dischargeability of its debt under § 523(a). It argued that it did not receive notice through ADFA's post office box number even though DWS was listed as a creditor in the debtor's case. The parties stipulated that there was an administrative finding of fraud based on a discrepancy between income reported by the debtor and income reported by the debtor's employer. Based on this administrative finding, DWS argued that § 523(a)(2)(A) is applicable and the Court should find that

is closely related to the DWS both geographically and in terms of governmental hierarchi-

cal organization."

the debtor's debt to DWS is nondischargeable.

## CONCLUSIONS OF LAW

■ Section 727 provides that, except as provided in § 523 of the code, a discharge under § 727(a) "discharges the debtor from all debts that arose before the date of the order for relief. . . ." 11 U.S.C. § 727(b). Additionally, § 524 establishes a discharge injunction that "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(2). The purpose of the injunction is to " 'ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.' " *Everly v. 4745 Second Ave., Ltd. (In re Everly* ), 346 B.R. 791, 795 (8th Cir. BAP 2006) (quoting H.R.Rep. No. 95–595 1st Sess. 365–368 (1977)). Section 523 lists debts that are excepted from discharge and for which the discharge injunction does not apply. Of the nineteen debts listed under § 523(a), all but three of the debts are self-effectuating. In other words, "[t]he debts are excepted from discharge simply because of the nature of the debts." *Id.* The three exceptions are sometimes referred to as the "fraud" debts and are debts of the kind listed under § 523(a)(2), (4), and (6). For this type of debt, the creditor has the additional requirement to file a complaint to determine the dischargeability of the debt within 60 days of the date first set for the debtor's meeting of creditors. Fed. R. Bankr. P. 4007(c). If the creditor fails to file a timely complaint, the debt is no longer excepted from discharge.

■ The scope of the discharge is final when the court enters its order of discharge, and subsequent events cannot alter the determination that a debt either was or was not discharged. *In re Everly,*

346 B.R. at 795. To the extent a creditor did not have notice of the debtor's bankruptcy filing, the code provides for the non-dischargeability of that creditor's debt under § 523(a)(3), one of the self-effectuating provisions. Section 523(a)(3) states that a discharge under § 727 does not discharge an individual debtor from any debt—

> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> >
> > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3). This provision protects creditors who did not receive notice of the debtor's filing because they were not properly scheduled. *In re Everly,* 346 B.R. at 796. In this case, the debtor admits in his motion for contempt that DWS was "nominally listed" as a creditor but that the address listed for DWS was the wrong address. Neither side contends this was an "asset" case or that the properly scheduled creditors received a distribution from the estate. The trustee filed his report of no distribution on February 19, 2013. The remainder of the Court's discussion will proceed on the recognition that the debtor's case was a "no-asset" case. Under § 523(a)(3)(A), the defining event is the creditor's ability to timely file

a proof of claim. In a no-asset case, the date to file a proof of claim is never set by the court unless assets are later discovered, at which time all scheduled creditors would have an opportunity to file a timely proof of claim. In this instance, there is no allegation that assets were later discovered. In other words, if a case is a no-asset case, there never would be a time when it is too late to permit the timely filing of a proof of claim. Ergo, according to some courts, § 523(a)(3)(A) would not be implicated. *See Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 469 (6th Cir. 1998); *Judd v. Wolfe*, 78 F.3d 110, 114 (3rd Cir.1996); *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1436 (9th Cir.1993); *but see Colonial Sur. Co. v. Weizman*, 564 F.3d 526, 531 (1st Cir.2009) (holding that an unlisted debt is not discharged absent a showing by the debtor that law and equities justify the relief); *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 290 (5th Cir.1994) (listing three factors a court must consider to determine whether omitted creditor's unscheduled debt is discharged); *In re Stark*, 717 F.2d 322 (7th Cir.1983) (same as *Weizman*).[2]

■ The underlying argument changes when there is an allegation of fraud involved in the proceeding. If the debt is alleged to be a debt under § 523(a)(2), (4), or (6), § 523(a)(3)(B) is the appropriate subsection. Section 523(a)(3)(B) requires not only that the creditor had the ability to timely file a proof of claim, but also the ability to timely request a determination of dischargeability of the alleged § 523(a)(2), (4), or (6) debt, typically within 60 days of the date first set for the meeting of creditors. In the case before the Court, the parties stipulated to an administrative finding of fraud, potentially resulting in a claim under § 523(a)(2). Accordingly, § 523(a)(3)(B) is implicated.

■ Litigation under § 523(a)(3)(B) can proceed at anytime; the creditor is not restrained by the rule that requires a complaint to be filed within 60 days of the date first set for the meeting of creditors. Fed. R. Bankr. P. 4007(b). Further, the bankruptcy court no longer has exclusive jurisdiction over the determination of dischargeability under § 523(a)(2), (4), or (6); the bankruptcy court shares jurisdiction with the state court over all other § 523 exceptions to discharge, including § 523(a)(3). *In re Everly*, 346 B.R. at 796. "'In short, the penalty to the debtor for failing to schedule a [debt under § 523(a)(2)(4) or (6)] or otherwise inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.'" *Id.* at 796–97 (quoting *In re Jenkins*, 330 B.R. 625, 631 (Bankr. E.D.Tenn.2005)).

■ It is axiomatic that a debtor would never allege that a debt was obtained by fraudulent means. Without notice to the affected creditor, the creditor would not have had the opportunity to file a com-

---

**2.** The lack of notice to, or omission of, a creditor in a no-asset case has given rise to what is sometimes called the "no-asset rule." The problem with recognizing a blanket "no-asset rule" occurs when, as here, a creditor alleges that the debt would have otherwise been non-dischargeable under § 523(a)(2), (4), or (6). All four cases cited by the debtor in support of his argument for the "no-asset rule" in his motion for contempt dealt with debts that were not of the type found under § 523(a)(2), (4), or (6). In *In re Madaj*, the parties agreed that if the debt was listed, it would have been discharged, 149 F.3d at 468; in *Judd*, the creditor refused the opportunity to show that his claim fell under either § 523(a)(2), (4), or (6), 78 F.3d at 116; in *In re Beezley*, § 523(a)(3)(B) was not before the court but the court stated in dicta that a § 523(a)(3)(B) debt "is not discharged," 994 F.2d at 1437; and in *In re Stone*, the parties stipulated that the debt was a debt under § 523(a)(3)(A), 10 F.3d at 288.

plaint to allege fraud and have the court determine the dischargeability of the creditor's debt under either § 523(a)(2), (4), or (6). Determination whether the debt was, in fact, a non-dischargeable debt upon the debtor's discharge, can occur in one of three ways. First, either the debtor or the creditor can file a complaint to determine dischargeability of the debt under § 523(a)(3). This complaint can be filed in either state court or bankruptcy court because the cause of action is now based on § 523(a)(3) and not the underlying alleged § 523(a)(2), (4), or (6) cause of action; the bankruptcy court's exclusive jurisdiction to hear a § 523(a)(2), (4), or (6) action has ended. *In re Everly,* 346 B.R. at 796. Under this scenario, the better practice would be for the debtor to file a complaint either in bankruptcy court or state court to determine the dischargeability of the debt.[3] If the creditor did not believe it had a fraud cause of action under § 523(a)(2), (4), or (6), it simply would not answer the complaint and the debt would be deemed discharged on default judgment.[4] Conversely, if the creditor believed it had a fraud cause of action, it would respond to the lawsuit and the court would resolve the complaint.

Second, at the time the creditor begins collection activity in state court, the debtor could allege as an affirmative defense the discharge of the debt in bankruptcy. The state court would then be able to resolve the issue under its concurrent jurisdiction to hear a § 523(a)(3) cause of action. Finally, the debtor could file a motion with the bankruptcy court to enforce the discharge injunction under § 524(a). However, "as long as a creditor has a good faith basis for believing that its

debt was excepted from discharge or ... had no knowledge of any such discharge, the creditor is not subject to sanctions for violating the discharge injunction...." *In re Everly,* 346 B.R. at 797–98.

In this instance, the Court has no basis for finding DWS in contempt. The debtor failed to use the correct address for DWS and DWS alleges it did not have notice of the debtor's bankruptcy filing. DWS is under no obligation to return the money and then file an adversary proceeding to determine dischargeability, as argued by the debtor. The debtor failed to list DWS properly and, as an omitted creditor, the debt to DWS is not discharged under § 523(a)(3) unless otherwise proven. Based on the above discussion, the Court denies the debtor's motion for contempt.

IT IS SO ORDERED.

---

**3.** There is no charge to any party to reopen a bankruptcy case to determine the dischargeability of a debt. Fed. R. Bankr. P. 4007(b). Further, there is no charge to the debtor to file an adversary proceeding. Bankruptcy

Court Miscellaneous Fee Schedule, 28 U.S.C. § 1930(6).

**4.** This is the essence of the "no-asset rule" discussed above in footnote 2.